# KEYSTONE MINING CO. ET AL. V. GALLAGHER ET AL.

1. The extent of the jurisdiction of the county courts as to their pecuniary limit in suits, to enforce lien claims, is to be measured by the amount involved in each claim severally, and not the aggregate of all the claims presented against the same property.

Where no one claim exceeds $2,000.00 in amount, any number of claims may be adjudicated in the same proceeding.

2. The legal effect of the latter clause of section seven of the act of 1872, is to give the mechanic, laborer or material man, a lien from the date of the *commencement* of the labor or the furnishing of the materials.

3. Under the provisions of section nine of the schedule of the constitution, the county courts, created by the constitution, were immediately upon the adoption of the constitution, clothed with all the powers theretofore possessed by the probate courts.

4. A house built for the use of the mine and being part of the mining property, may be sold with the mine for the purpose of enforcing a lien under the statute. Powder, steel and candles furnished for the use of the mine, *held* to be clearly within the meaning of the statute, and for which a lien may be enforced.

5. Want of *personal* service and the non-appearance of a defendant, in an action to enforce a lien claim, will not vitiate a decree against such defendant, although before the commencement of the suit he had parted with his interest.

6. The statute provides that the premises may be sold within the time and in the manner provided for sales on execution issuing out of any court of record.

*Error to County Court of Boulder County.*

ON February 14th, 1877, Gallagher filed his petition in the County Court of Boulder county for a mechanic's lien. The petition stated substantially that on the first day of August, 1876, and thence until the 15th day of December of the same year, James W. Strong was the owner of the Keystone lode, situated in Magnolia mining district, in Boulder county; that Strong employed the petitioner to do certain work in developing said lode, and that the work was done by the petitioner between the first and fourteenth of September, 1876; also that Strong employed the petitioner on the 14th of September, 1876, to work by the day on said lode, and that he performed labor upon said lode until the 14th day of December, 1876. That Strong was indebted to him for said work, etc.; and that on the 15th of December, 1876, Strong conveyed the property to the Keystone Mining Company; and that the said company was the owner of the property at the time of filing his petition, on the 22nd day of January, 1877. That on said last mentioned date, notice and statement were filed in the office of the county clerk; that William Gillett and others claimed to have liens, and prayed that they be made defendants; and that he might be decreed to have a lien, etc., for the balance of the amount, $148.31, alleged to be due him. Summons was issued, returnable to the April term, 1877. Some of the defendants not being served, publication was had. Appearance was entered and answers put in for the various defendants, except Strong, who was defaulted June 21, 1877, and the cause referred to a special master to take proofs. Upon the coming in of the master's report, on the 25th day of June, 1877, a decree was entered in favor of the several claimants, exceeding in the aggregate the sum of $2,000, and for a lien upon the premises in question. It was also ordered that the several sums, with interest from the date of the decree at ten per cent. per annum, be paid by July 25, 1877; and in default, that the master should make sale of the property on the 25th of August, 1877, upon not less than twenty days' notice. To

reverse this decree, the Keystone Mining Company sued out a writ of error.

Mr. W. A. HARDENBROOK, for plaintiffs in error.

Messrs. BUTLER & WRIGHT and Messrs. BLAKE, WHITLEY and NORTH, for defendants in error.

STONE, J. The aggregate amount of the several sums found due the defendants in error as lien claimants, exceeded two thousand dollars, and it is assigned for error, that, under the constitutional limitation of the jurisdiction of county courts to two thousand dollars as to the amount claimed, the court below was without jurisdiction to render the decree. We cannot regard the decree as open to this objection. The demands of the lien claimants are several in their nature, and in the mode of their enforcement. Each files his separate statement as the statute requires. Each presents his separate petition to enforce the lien, and therein sets out his particular cause of action. The individual claim of no one exceeds the sum of two thousand dollars. The court renders a decree several as to each claimant, and so long as no one claim exceeds two thousand dollars, it is no objection that the aggregate amount of all the claims is in excess of that sum. Each claim so presented is, in its nature, a several and distinct action, but in order to avoid a multiplicity of writs, sales and costs, and to prevent preferences among lien claimants arising from priority of decrees, sales and payments, the statute has provided a mode of enforcing these several rights, whereby all the claims may be heard and determined in nominally one proceeding, adjudicated at one time, and enforced under one decree; a mode which was evidently intended to be the most equitable and the least expensive. In the case of *Powers et al.* v. *McCord, et al.* 36 Ill. 221, the court, in discussing the provisions of the statute requiring the court to ascertain the amount due each creditor, and to direct the application of the proceeds of sales, say: "These provisions are peremptory, and the court, on

the trial, must ascertain the sum due to each claimant before a decree is rendered, directing the sale of the property, and the application of its proceeds to the claimants in proportion to the amount found due to each, if not sufficient to pay all of their claims. It may be, and perhaps is, the better practice, to empanel a jury to pass upon and find the amount due each claimant, *as though they were separate proceedings.* But where there are but few parties, and the claims are not complicated, no objection is perceived to submitting the whole case to the same jury. But a final decree, ordering a sale of the property, should not be rendered until the sum due each of the claimants is ascertained. Then their several rights should be declared in the decree, and the property sold, if payment is not made by the day fixed in the decree, to satisfy the sums due to the several claimants."

We think the intent of the statute is manifest, and that it was competent for the legislature to provide that any number of claims against the same property, where no one exceeds $2,000 in amount, may be adjudicated in one proceeding without infringing the constitutional limitation referred to. In this view, we think the extent of the jurisdiction of county courts, as to their pecuniary limit in these cases, is to be measured by the amount involved in each claim severally; and not the aggregate of all the claims presented against the same property. The record shows that the property, previous to December 15th, 1876, was owned by one Strong and others, by whom the claimants were severally employed to do the work and furnish the materials for which the liens were claimed. That such work was continued up to the said 15th day of December ; that on that date the property was purchased by the Keystone Mining Company, to whom it was conveyed by good and sufficient deed, and that the lien "statements" of all the claimants were filed with the county clerk in the manner provided by statute in the following month, January, 1877. Upon this state of facts, it is claimed by plaintiffs in error that no valid decree could be rendered against the Keystone Mining

Company, for the reason that at the time the property was con- veyed to the company there were no liens in existence; that such liens only attach from the date of filing the statements required by statute. This construction cannot be given to our statute. The identical point has been passed upon by this court in the case of *Mellor* v. *Valentine*, 3 Col. 258, where it is held that the legal effect of the latter clause of section 7, of the act of 1872, which declares that "all liens herein provided for shall be preferred to every other lien or incumbrance which shall attach upon any property made subject thereto subsequent to the time when the work or labor was commenced, or the first of the materials furnished; and also to all mortgages and en- cumbrances unrecorded at the time such work or labor was commenced, or the first of such materials were furnished," etc., is to give the mechanic, laborer or material man a lien from the date of the *commencement* of the labor or the furnishing of materials. The same construction and legal effect is given to a similar provision of a statute by the Supreme Court of Iowa, in the case of *Monroe* v. *West*, 12 Iowa, 121. See also Phil- lips on Mechanics' Liens, Sec. 228.

Another point made by counsel for plaintiffs in error is, that the county courts, being created by the constitution, were without jurisdiction except such as given by the constitution expressly in relation to the estates of deceased persons, until further powers were conferred by law, which was not done until the acts of the General Assembly of the State in relation thereto took effect, June 22, 1877. This position is untenable, not because of the provisions of Sec. 8 of the schedule, cited by counsel, and which we conceive does not confer the jurisdic- tion claimed by such courts prior to June 22, 1877, but by the provisions of Sec. 9 of the schedule of the constitution, which are that "The terms 'probate court,' or 'probate judge,' whenever occurring in the statutes of Colorado Territory, shall, after the adoption of this constitution, be held to apply to the county court or county judge, and all laws specially applicable to the probate court in any county shall be con-

strued to apply to and be in force as to any county court in the same county until repealed." Under this provision, upon the adoption of the constitution, the county courts created thereby were immediately clothed with all the powers theretofore possessed by the probate courts.

All the lienors except Blodgett, claim for work done and materials furnished in the mine and for the working of the mine directly. Blodgett's claim is for furnishing the materials for and building a house or shop contiguous to the mine, and built for the use of the mine under the direction of the mining superintendent. The house was owned by the owners of the mine, and was a part of the mining property, and we see no error in the decree in favor of Blodgett and for the sale of the house, together with the mine, for the purpose of enforcing the liens.

The proofs to establish the claims of Coan and Gillet were sufficient to warrant the decree as to them respectively.

It is objected that the decree as to Boettcher's claim is erroneous, because the articles furnished by him were not of the character comprehended by the lien law, specifying "timber or other materials to be used in or about the mine." The testimony shows that the articles furnished were powder, steel, and candles, for the use of the mine. These articles are as clearly within the meaning of the statute as anything we can conceive of essential to the working of a mine.

That Strong was not personally served, and did not appear, is no ground of error in the decree. Service as to him was made by publication, in accordance with the statute providing for such case. The only other assignment of error necessary to notice is, that the decree provided for a sale in less than ninety days.

The act under which the proceedings were had provides, that the premises may be sold within the time and in the manner provided for sales on executions issued out of any court of record. That the sale was made in accordance with the statute appears by the record. The regularity of the decree in this

respect, therefore, cannot be questioned. The Illinois cases cited by counsel upon this point are not apt, inasmuch as the sales referred to in those cases were fixed by the lower court in its discretion, and the Supreme Court held that, in the absence of statutory provision governing the length of notice, the time should not be less than ninety days, that being the ordinary lifetime of an execution in chancery proceedings in that State.

There being no error in the proceedings, the decree of the court below is affirmed.

*Decree affirmed.*