(December 22, 1903.)

# THOMPSON v. WISE BOY MINING AND MILLING COMPANY.

[74 Pac. 958.]

WHAT CONSTITUTES A MINE—MINER'S LIEN—WORK IN QUARTZ-MILL—
ATTORNEY'S FEES.

1. Where the evidence shows that four quartz mining claims were used, worked and operated together under the name of the "Wise Boy mine," and the court found, as a fact in the case, that the four mining claims constituted the "Wise Boy mine," and that such claims were "run, operated, and mined, and worked as a mine," *held,* that such finding is sustained by the evidence. and will not be disturbed on appeal. Following *Phillips v. Salmon River Mining and Development Co.* (Idaho), 72 Pac. 886.

2. Where a person performs labor in a quartz-mill located upon and belonging to a mine under employment by the owners, and such labor consists in working "as an amalgamator, attending to putting silver into batteries, dressing plates, keeping the machinery in running order, looking after the concentrates, and adjusting them and putting them in shape to run, cleaning amalgam, looking after the rock-breaker, and generally looking after the entire machinery," he is entitled to a lien on the mine for such labor under the lien laws of this state.

3. Where the ore extracted from the mine is milled upon the mine and in a mill belonging to the mine, the labor thereon comes within the intent and meaning of the lien laws, and a lien therefor is properly allowed.

4. That portion of section 12 of lien laws of 1899 which provides that "The court shall also allow as a part of the costs the moneys paid for filing and recording the claim and reasonable attorney's fees," is not class legislation and is not in violation of section 18 of article 1 of the constitution.

5. Where such provision for allowance of attorneys' fees does not single out particular debtors, but is made to apply alike to all debtors, it is not open to the objection that it does not afford equal justice to all.

(Syllabus by the court.)

APPEAL from District Court, Idaho County. Honorable E. C. Steele, Judge.

Action to foreclose a miner's lien. Judgment for plaintiff foreclosing lien and for attorneys' fees. Defendants appeal from the judgment and from an order denying their motion for a new trial. Affirmed.

The facts are fully stated in the opinion.

Fogg & Nugent, for Appellant, cite no authorities upon the points decided not found in the opinion of the court.

W. N. Scales, for Respondent.

All the cases cited in respondent's brief on the question decided by the court are found in the opinion.

AILSHIE, J.—This action was commenced in the district court to enforce a miner's lien for the sum of $253.75, together with a reasonable attorney's fee and costs of suit upon four adjoining quartz mining claims which were being worked and operated together as one claim under the name of the "Wise Boy mine." It appears that the defendants, A. W. Moore, W. E. Kelly, W. P. McDonald and Wilbur E. Moore, were the owners of two of the quartz claims known as the Wise Boy and the North Star, and that W. E. Kelly, A. W. Moore and W. P. McDonald were the owners of the other two claims, being the Crystal Butte and Triple Butte locations.

The plaintiff claimed his lien for labor performed in and about the quartz-mill which was located on the Crystal Butte claim and where ore was being reduced and treated as it was mined from the Wise Boy and North Star claims. Plaintiff testifies that the work done by him and for which he was employed was as follows: "I was employed as an amalgamator. As an amalgamator; attending to putting silver into batteries, dressing plates, keeping the machinery in running order, looking after the concentrates and adjusting them and putting them in shape to run; cleaning amalgam, looking after the rock-breaker and generally looking after the entire machinery." This testimony was substantially in accordance with the statement contained in his lien as to the nature of the work done by him. It was also shown by the evidence that the four claims

Dec. 1903.]    Thompson v. Wise Boy Min. etc. Co.    365

Opinion of the Court—Ailshie, J.

above named were used, worked and operated together as one "mine," under the name of the "Wise Boy mine," and the mill was known and designated by the owners and the public at large as the "Wise Boy mill." The court found as a fact in the case that these four mining claims constituted the Wise Boy mine and were "run, operated and mined and worked as a mine." This finding is sustained by the evidence and cannot be disturbed by this court. (See *Phillips v. Salmon River Min. etc. Co., ante,* p. 149, 72 Pac. 886.)

The most serious question raised by appellants in this case and upon which they seem to rely is that the services rendered by the respondent are not the subject of a lien, and that the lien laws of this state do not contemplate the granting of a lien to one doing such work in a quartz-mill, whether it be situated upon a mine or elsewhere. It is contended by appellants that under the statute of this state which grants a lien to "every person performing labor upon or furnishing materials to be used in the construction, alteration or repair of any mining claim, building, wharf, bridge, ditch, dike, flume, tunnel, fence, machinery, railroad, wagon road, aqueduct to create hydraulic power or any other structure, or who performs labor in any mine or mining claim, has a lien upon the same for the work or labor done or materials furnished," respondent acquired no lien for the character of labor he performed.

Appellants argue that the labor for which this lien was sought was simply labor upon personal property, namely, the ore after being extracted from the mine, and that such labor cannot be said to be work in or upon the mine. They further say: "The real test is whether the labor is such as may have added to the value of the property." In support of this position they cite *McCormick v. Los Angeles W. Co.,* 40 Cal. 185; *Barnard v. McKinzie,* 4 Colo. 251; *Boyle v. Mt. Key Min. Co.,* 9 N. Mex. 237, 50 Pac. 347.

The California case cited by counsel has no application to the case at bar, and the reasoning it contains throws but little light upon this question. That was a case where the man who cooked for the crew that were building a reservoir filed a lien

against the property for his wages, and the court held that the nature of the services rendered were not such as contemplated by the statutes of that state.

The Colorado case is a case where a teamster filed a lien against a mine to collect his wages for hauling ore from the mine to a mill near by; and the New Mexico case holds that a "general manager and superintendent of a mine who does not perform bodily toil is not entitled to a lien" under the laws of that territory.

Appellant seems to cite these authorities for the benefit of the reasoning contained in them to the effect that liens are allowed because the claimant has done some work in or upon the property which tended to improve the same or enhance its value, and the labor thereby became a part of the property upon which he claims his lien. This reasoning was usually correct under the original mechanic's lien laws enacted for the protection of workmen on buildings and structures, where their labor or material actually entered into the structure and thereby became a part of the property upon which they sought to enforce their liens.

It seems to us, however, that as these laws have come to be extended to mines and mining properties, this line of reasoning has to a great extent become faulty. To say that the laborer who goes into the placer mine and washes out all the gold it contains, or into a quartz mine and extracts and removes the values it contains, has added to the value of the mines, is not a course of reasoning that appeals to us very forcibly.

The legislature in enacting these laws evidently did not have in mind the protection of the mine owners, but rather the protection of the laborers. They were not contemplating, when they enacted this law, the probability of the laborers enhancing or depreciating the value of the prospects, mining claims, or mines, as the case might be, but rather that the men who were employed and sent out to do work upon such properties should be entitled to a lien on them for their services. To say that the laborer is worthy of his hire is to tell him what he already

knows; but what he wants to know and what the legislature evidently intended is that this maxim will be carried a step further, and that he shall be assured that he is not only worthy of his hire, but that he will get his pay, and that the property upon or about which he worked shall be liable for such pay.

Respondent's counsel argues that the "Wise Boy mill was affixed to the mine, was a part of the realty and a part of the 'mine.'" Appellants' counsel in their reply brief say: "This is not disputed and is entirely immaterial." If it be true that the mill was "affixed to the mine and was a part of the realty," and we have no inclination to dispute it, then work in the mill was as much work in the mine as operating a hoist would be work in the mine (*Tredinnick v. Red Cloud Consolidated Min. Co.,* 72 Cal. 78, 13 Pac. 133) ; or as the sharpening of tools by a blacksmith (*Malone v. Big Flat Gravel Co.,* 76 Cal. 578, 18 Pac. 774) ; or as the superintending the work on the mill and machinery (*Rara Avis Gold etc. Min. Co. v. Bouschie,* 9 Colo. 385, 12 Pac. 433) ; or the construction of a house contiguous to a mine (*Keystone Min. Co. v. Gallagher,* 5 Colo. 23) ; or the construction of a mill on a mine (*Williams v. Mountaineer Min. Co.,* 102 Cal. 134, 34 Pac. 702, 36 Pac. 388) ; or the "bossing" of men who are working in a mine and keeping their time and giving them orders for their pay (*Capron v. Stout,* 11 Nev. 304) ; or an overseer and foreman of a body of miners (*Flagstaff Silver Min. Co. of Utah v. Collins,* 104 U. S. 178, 26 L. ed. 704).

The milling of the ore extracted from the mine is as valuable to the mine owner as the extraction of the ore; and where it is milled upon the mine and in a mill belonging to the mine, we see no more reason for denying the man a lien who works in the mill than for denying such lien to the man who operates the hoist or runs the cars or handles the pick or shovel. And we are very strongly inclined to the belief that the legislature had the one in mind as much as the other when they enacted this law.

In *Lockhart v. Rollins,* 2 Idaho, 540, 21 Pac. 413, Mr. Justice Berry, speaking for this court, came as near touching upon

the question involved in this case as is done in any of the cases to which we are cited. It was there held that the services of a watchman in looking after and taking care of buildings, engines, boilers, machinery, hoisting works and tools of the mine was work upon the mine within the meaning of the law; and while the question there considered was with reference to what constituted assessment work, the court in arriving at that conclusion considered and discussed many cases where liens had been sought upon mines and mining claims, and treated them as analogous subjects.

The next question raised by appellants is the validity of that part of section 12 of the lien laws of 1899 which provides as follows: "The court shall also allow as part of the costs the moneys paid for filing and recording the claim and reasonable attorneys' fees," upon all ground that the same is class legislation and is in violation of section 18 of article 1 of the constitution, which is as follows: "Courts of justice shall be open to every person and a speedy remedy afforded for every injury of person, property, or character, and right and justice shall be administered without sale, denial, delay or prejudice." In support of this position appellant cites: *Gulf C. & S. F. R. R. Co. v. Ellis,* 165 U. S. 159, 17 Sup. Ct. Rep. 255, 41 L. ed. 666; *Davidson v. Jennings,* 27 Colo. 187, 83 Am. St. Rep. 49, 60 Pac. 354, 48 L. R. A. 340; *Brubaker v. Bennett,* 19 Utah, 401, 57 Pac. 170.

We do not think the first case cited by appellant from the United States supreme court is in point here, for the reason that the statute under consideration in that case was an act of the Texas legislature, wherein they provided that all "railway corporations" doing business in that state should, in case of a failure to pay certain claims within a specified time after presentation, be liable to pay an attorney fee of $10. It will be observed from this case that the legislature did not impose such fee or costs upon all debtors, nor upon all corporations, but simply singled out one class of corporations, namely, railroads, and sought to subject them to this penalty. We think from the argument and reasoning found in the opinion of a

majority of the court in that case that had that statute, like ours, applied to all debtors alike, and not singled out a particular class of debtors, the decision would have been in favor of sustaining the law.    The same is true of *Johnson v. Goodyear Min. Co.,* 127 Cal. 4, 78 Am. St. Rep. 17, 59 Pac. 304, 47 L. R. A. 338, cited by appellant.    It will be seen that no limitation is placed upon the operation of the statute in this state, but that it applies alike to all debtors, and in the event the lien claim passes to judgment it allows the claimant to have taxed up as a part of his costs a reasonable sum for attorneys' fees which becomes a part of the claimant's judgment.    Costs are allowed to litigants only by reason of the statutes authorizing them, and we see no reason why the legislature have not the power to authorize the entry of a judgment for costs which will cover a reasonable sum for attorneys' fees in lien cases.    Under the statute no such costs can be entered if the lien claimant fails to establish his lien.    The defendant in such cases is not prosecuting an action and is not seeking to recover any sum whatever from the lien claimant, and hence stands upon an entirely different principle from that of the party seeking to enforce his lien.    It is generally held that attorneys' fees may be recovered when they are provided for in the contract.    We think that upon principle there can be no material distinction between such allowance whether stipulated in the contract or provided for in the statute; for this reason—liens rest upon contracts.    Someone must have originally contracted for the labor for which a lien is claimed, and so soon as that contract is made the lien statute steps in and by operation of law writes into that contract the provision that in case of failure to pay the laborer within a certain time he shall have his lien, and in case of a foreclosure thereof, reasonable attorneys' fees.    They must be deemed to have contracted with this statute in view, and it would seem to us that the party about to become the debtor must be said to have contracted for attorneys' fees as much as for a lien or for costs.

In *Davidson v. Jennings,* the supreme court of Colorado in discussing a statute in that state authorizing the allowance of

attorneys' fees in such cases, say: "It will be seen that this section imposes a penalty upon the defendant for exercising, in this class of cases, the common right of making a defense, which is accorded to every other litigant in the courts, by subjecting him to the payment of the plaintiff's attorneys' fees if he is successful, without giving him [the defendant] a reciprocal right if he is victorious."

Notwithstanding this view of the supreme court of Colorado, with reference to the purpose or intent of their statute, we do not think the purpose or intent of our statute is as stated by that learned court. Our statute does not undertake to impose a penalty upon any person for making his defense; and, indeed, if he can present such a defense in court as will defeat the plaintiff's lien, he may also defeat his right of recovering an attorney fee. These extra costs, imposed upon a defendant in this class of cases under our statute, are allowed as a penalty for not paying his honest debts and to reimburse the plaintiff for the prosecution of his action.

Statutes similar to our own providing for allowance of attorneys' fees have been upheld in the following cases: *Genest v. Las Vegas Masonic Bldg. Assn.* (N. Mex.), 67 Pac. 743, 57 L. R. A. 396; *Armijo v. Mountain Electric Co.* (N. Mex.), 67 Pac. 726; *Wortman v. Kleinschmidt,* 12 Mont. 316, 30 Pac. 280; *Supply Co. v. Wells,* 16 Mont. 65, 40 Pac. 78; *Griffith v. Maxwell,* 20 Wash. 403, 55 Pac. 571; *Ivall v. Willis,* 17 Wash. 645, 50 Pac. 467; *Vogel v. Pekoc,* 157 Ill. 339, 42 N. E. 386, 30 L. R. A. 491; *Dell v. Marvin,* 41 Fla. 221, 79 Am. St. Rep. 171, 26 South. 188, 45 L. R. A. 201; *Cameron v. Chicago M. & St. P. R. Co.,* 63 Minn. 384, 65 N. W. 652, 31 L. R. A. 553; *Dow v. Beidelman,* 49 Ark. 455, 5 S. W. 718; *Perkins v. St. Louis I. M. & S. R. Co.,* 103 Mo. 52, 15 S. W. 320, 11 L. R. A. 426; *Burlington etc. Ry. Co. v. Dey,* 82 Iowa, 312, 340, 31 Am. St. Rep. 477, 12 L. R. A. 436, 48 N. W. 98.

Such attorneys' fees seem to have been recognized and uniformly sustained in California. (*Rapp v. Spring Valley Gold Co.,* 74 Cal. 532, 16 Pac. 325; *McIntyre v. Trautner,* 78 Cal. 449, 21 Pac. 15; *Jewell v. McKay,* 82 Cal. 152, 23 Pac. 139.)

We have examined the other rulings of the court of which

appellants complained but find no error therein.   The defendants rested upon their motion for a nonsuit and the questions herein examined dispose of all the material issues raised by this appeal.

The judgment and order appealed from are affirmed, with costs to respondent.

Sullivan, C. J., and Stockslager, J., concur.