651 P.2d 529

**ACOUSTIC SPECIALTIES, INC., Plaintiff-Respondent,**

v.

**Wallace A. WRIGHT, Jr., Willard R. Wood, W. Coy Wood, dba Hilton Inn, Defendants-Appellants,**

**RK & A Jones, Inc., Defendant,**

and

**WHW Management, Inc., Intervenor-Appellant.**

**GRANITE MILL & FIXTURE COMPANY, Plaintiff-Respondent,**

v.

**Wallace A. WRIGHT, Jr., Willard R. Wood, W. Coy Wood, dba Hilton Inn, Defendants-Appellants,**

**RK & A Jones, Inc., Defendant,**

and

**WHW Management, Inc., Intervenor-Appellant.**

No. 13666.

Supreme Court of Idaho.

Sept. 17, 1982.

596

William Francis Bacon, Louis F. Racine and Thomas J. Holmes, Pocatello, for defendants-appellants and intervenor-appellant.

Lowell N. Hawkes and DaLon Esplin, Pocatello, for plaintiffs-respondents.

McFADDEN, Justice.

The instant appeal arises out of two separate actions for materialmen's liens, pursuant to I.C. §§ 45–501 *et seq.* Acoustic Specialties, Inc., brought its action to foreclose its claim of lien against Wallace A. Wright, Jr., Willard R. Wood, and W. Coy Wood, doing business as Hilton Inn, and R.K. & A. Jones, Inc. Similarly, Granite Mill and Fixture Company brought its action to foreclose its claim of lien against the same defendants. During the course of the proceedings in the two actions, W.H.W. Management, Inc., intervened in both actions as the lessee of the real property upon which Acoustic Specialties and Granite Mill and Fixture sought to foreclose their respective claims of lien and as the party which contracted with R.K. & A. Jones for the construction work giving rise to the two claims. W.W.H. Management interposed certain defenses to the two causes of action and cross claimed against R.K. & A. Jones in both actions. Both Acoustic Specialties and Granite Mill and Fixture obtained garnishee judgments against Wright, Wood and Wood and their partnership enterprise doing business as the Hilton Inn, and ultimately judgments of foreclosure on their respective claims of lien were granted by the district court. The district court, in so ordering, also awarded interest and costs to both plaintiffs and awarded $10,000.00 in attorney fees to Acoustic Specialties and

$6,000.00 in attorney fees to Granite Mill and Fixture. The district court stated that the payment of attorney fees, interest and costs could be obtained through the foreclosure on the real property of Wright, Wood and Wood. Thereafter, Wright, Wood and Wood, doing business as Hilton Inn, and W.H.W. Management appealed from the judgments of foreclosure and awards of interest and attorney fees. We affirm.

Wright, Wood and Wood own certain real property in Pocatello upon which is located their partnership enterprise, the Hilton Inn. The real property is leased to W.H.W. Management, which also manages the Hilton Inn. The hotel complex was constructed by R.K. & A. Jones, pursuant to a contract it entered into with W.H.W. Management. Acoustic Specialties and Granite Mill and Fixture were subcontractors on the project for R.K. & A. Jones. Pursuant to their contracts with R.K. & A. Jones, both subcontractors furnished materials and supplies to the general contractor. Upon completion of the construction of the Hilton Inn, R.K. & A. Jones was unable to pay $51,840.33 of the contract price to Acoustic Specialties and was also unable to pay $31,862.54 of the contract price to Granite Mill and Fixture. Representatives of R.K. & A. Jones told both subcontractors that the reason for nonpayment was because R.K. & A. Jones had not received payments from W.H.W. Management on behalf of the Hilton Inn.

Acoustic Specialties and Granite Mill and Fixture respectively filed claims of lien upon the real property on which the Hilton Inn is located. Both subcontractors timely initiated actions to foreclose those liens against Wright, Wood and Wood, as owners of the property, and joined R.K. & A. Jones as a party. The complaint of Acoustic Specialties contained three counts: count 1 was against Wright, Wood and Wood to foreclose a claim of lien filed against their real property in the sum of $51,840.33 plus interest; count 2 was against the same defendants for breach of contract and resulting lost profits and consequential damages of an undetermined amount; and count 3 was against R.K. & A. Jones for obtaining funds

from Wright, Wood and Wood and failing to pay over those funds. The complaint of Granite Mill & Fixture was identical in form except the amount claimed against Wright, Wood and Wood was $31,862.54.

Although the causes of action brought by Acoustic Specialties and Granite Mill and Fixture were distinct and separate, they were for all practical purposes treated as one case and all arguments on either cause of action were made at the same time before the court. The issues presented to the district court were the same for both actions. Accordingly, to avoid repetition the actions shall be treated in a unified fashion for the remainder of this opinion.

After initiating their actions, plaintiffs each served a set of interrogatories on defendant R.K. & A. Jones, requesting in part that it state the correct amount it owes on the subcontracts and the total amount due and owing it on the general contract. R.K. & A. Jones answered that it owed $49,-590.00 to Acoustic Specialties and gave two figures as to the amount it owed Granite Mill and Fixture: $29,832.31 or $31,862.80. R.K. & A. Jones also answered that it was owed $515,458.00 for its work on the Hilton Inn.

Based on these admissions, plaintiffs each moved for partial summary judgment against R.K. & A. Jones. Partial summary judgments were granted on May 9, 1979. The judgment for Acoustic Specialties was $49,590.00 and the judgment for Granite Mill and Fixture was $29,832.31.

At the time the partial summary judgments were entered, R.K. & A. Jones, under an entirely separate contract, was in the process of completing construction on the Holiday Inn of Pocatello. Plaintiffs, by issuing execution on the judgments, attempted to garnish the sums due R.K. & A. Jones on that contract from the Holiday Inn and Idaho First National Bank, through which plaintiffs understood R.K. & A. Jones would receive payment for its work at the Holiday Inn. R.K. & A. Jones moved to quash the writs of execution and garnishments on the grounds that it had not been afforded an opportunity to appeal the par-

tial summary judgments and, therefore, execution could not issue. The court quashed the writs of execution, but immediately entered new partial summary judgments, certified under I.R.C.P. 54(b) as final for the purposes of execution and appeal. Nonetheless, by then it was too late to intercept the funds which were to be paid R.K. & A. Jones.

Since it appeared from R.K. & A. Jones' answers to the interrogatories that the Hilton Inn still owed R.K. & A. Jones a substantial sum for work on the Hilton Inn, both plaintiffs garnished the landowners Wright, Wood and Wood and served upon them special interrogatories with the garnishment. In an untimely answer the landowners admitted that an undisputed amount of $97,583.97 was owed R.K. & A. Jones. After the sheriff had returned the garnishment and answers to counsel for plaintiffs, counsel for Wright, Wood and Wood requested that Mr. Coy Wood be able to change one of the figures on the garnishment answers. Mr. Wood then came to the office of counsel for plaintiffs and crossed out the undisputed amount and replaced it with the word "unknown."

Plaintiffs then moved the court for garnishee judgments against Wright, Wood and Wood, based on the grounds that they had admitted owing funds to R.K. & A. Jones and then contradicted the admission. Counsel for Wright, Wood and Wood failed to attend the hearing on that motion. Based upon the answer to interrogatories, garnishee judgments were entered against Wright, Wood and Wood.

Thereafter, conferences ensued between counsel for plaintiffs and counsel for Wright, Wood and Wood. On August 29, 1979, as a result of an informal meeting between counsel and the court, the parties agreed to an informal arrangement that no action would be taken on the garnishee judgment until the district judge returned from a brief vacation. At that time upon his return the judge would take up the issue of lien foreclosure judgment in the event the garnishee judgment had not been satisfied.

Counsel for plaintiffs did refrain from execution on the garnishee judgments, and filed its motion for summary judgment of foreclosure of the claims of lien. The hearing was scheduled for September 17, 1979.

On September 14, 1979, W.H.W. Management, Inc., an entity owned by Wright, Wood and Wood, and which manages the Hilton Inn of Pocatello, sought leave to intervene. The intervenor deposited with the court the amount of the claims of lien in return for full satisfaction of the garnishee judgments against Wright, Wood and Wood, and full satisfaction and release of the claims of lien against the real property.

At the hearing, counsel for plaintiffs refused to accept the deposit as full satisfaction of the claims of lien, because it did not provide for interest or attorney fees. By way of letter on November 1, 1979, W.H.W. Management, Inc. and Wright, Wood and Wood withdrew their condition that the funds deposited were in full satisfaction of the claims of lien. On November 2, 1979, the court ordered that the funds be deposited and paid to plaintiffs in full satisfaction of the garnishee judgments and in full satisfaction of the partial summary judgments, but without prejudice to plaintiff's rights to assert any other claims which were before the court.

Thereafter, counsel for plaintiffs moved for the court to determine the amount of interest and attorney fees alleged to be still owing under the claims of lien and to foreclose the claims of lien. A hearing was held on the questions of an award of reasonable attorney fees and the amount of interest which plaintiffs had been required to pay in order to finance the receivables reflected by their lien amounts. Following the hearing, the court determined "that the plaintiffs are at this point in time entitled to attorney fees, interest and costs and can foreclose on the real property of the defendant landowners to obtain payment of these attorney fees, interest and costs." Judgment of foreclosure was subsequently entered. The interest awarded ran on the claims of lien from the date they became due until November 2, 1979, the date the deposit was

paid to the plaintiffs. In addition, the court awarded $10,000.00 in attorney fees to Acoustic Specialties and $6,000.00 in attorney fees to Granite Mill and Fixture.

Thereafter, the instant appeal was perfected by Wright, Wood and Wood, and W.H.W. Management.

■ The first issue presented on appeal is whether the district court erred in allowing interest to accrue on the lien amounts from the date they became due until November 2, 1979. Appellants argue that the accrual of interest on that portion of liens which were satisfied by credit to the garnishee judgments should have ceased with the tender on September 17, 1979 of sufficient funds to satisfy the garnishee judgments.

At the outset, it is to be observed that appellants' argument focuses on a very insignificant difference in the amount of accrued interest, *i.e.*, $313.38. This court is quite perplexed as to appellants' presentation of this issue on appeal inasmuch as a review of the applicable case law as it applies to the facts of this case discloses that appellants' argument is without foundation.

In *Aviation Industries, Inc. v. East and West Ins. Co.*, 70 Idaho 28, 32, 211 P.2d 156, 159 (1949), the following rules were stated as to when a tender will stop the accrual of interest on a debt.

"[A]ppellant complains of the allowance of interest and costs to the respondent on the ground that no interest [should accrue] after the tender by appellant, and no costs should have been allowed. *This would be true if the court had found that the amount due was the amount of the tender.* However, where the amount found due by the court was in excess of the tender, then costs were properly allowable. *Also, the amount tendered being less than the amount found due by the court, such tender did not estop the accumulation of interest upon any part of the debt.*" (Emphasis added).

The same rule has also been stated in the context of two cases involving mechanic's lien foreclosures: *Harrington v. McCarthy,*

91 Idaho 307, 420 P.2d 790 (1966), and *Smith v. Faris-Kesl Construction Co.,* 27 Idaho 407, 150 P. 25 (1915). In both cases an amount less than needed to satisfy the lien was tendered as a full satisfaction on the lien. In *Harrington* the court ruled that such a tender was "insufficient and invalid." 91 Idaho at 313, 420 P.2d at 795. Similarly, in *Smith* the court stated "[s]ince that is less than the amount found to be due upon the contract, and since said amount was tendered, not as partial payment, but as settlement in full, it did not stop the accumulation of interest upon any part of the debt." 27 Idaho at 413, 150 P. at 30.

In the instant case the tenders of September 17, 1979, were made on the specific condition they be considered full satisfaction of the claims of lien as well as the garnishee judgments. The district court subsequently held that interest and attorney fees were due on the claims of lien. Those amounts when added to the liens exceeded the amount tendered by the appellants. Thus, appellants had attempted through their September 17, 1979 tenders to obtain full satisfaction of the liens by only partial payment. Applying the rule of laws set forth earlier, it is apparent that the district court was correct in allowing interest to run until November 2, 1979, since the tenders of September 17, 1979 were insufficient and invalid.

The next issue presented on appeal is whether the district court erred in holding that the respondents were entitled to a reasonable attorney fee pursuant to I.C. § 45-513. The district court determined a reasonable attorney fee award to Acoustic Specialties was $10,000.00 and a reasonable attorney fee award to Granite Mill and Fixture was $6,000.00. Appellants contend that respondents were not entitled to attorney fee awards for the amounts collected through the foreclosure action in satisfaction of the partial summary judgments taken against R.K. & A. Jones and the garnishee judgments taken against appellants. Appellants also contend that the district court's awards of attorney fees were excessive. We disagree with both contentions.

I.C. § 45-513 provides for the award of reasonable attorney fees incurred in legal proceedings by a claimant to collect on a claim of lien.

"Joinder of actions.—Filing fees as costs —Attorney's fees.—Any number of persons claiming liens against the same property may join in the same action, and when separate actions are commenced the court may consolidate them. The court shall also allow as part of the costs the moneys paid for filing and recording the claim, and reasonable attorney's fees."

In the early case of *Thompson v. Wise Boy Mining and Mill Co.,* 9 Idaho 363, 74 P. 958 (1903), the court held that a provision for attorney fees in a statute creating a lien in favor of one performing labor in a mine, or on any other structure, does not violate a constitutional provision that justice shall be administered without prejudice. This ruling was put upon the ground that the statute applied alike to all debtors against whom a lien was allowed. The court stated: "We see no reason why the legislature have not the power to authorize the entry of a judgment for costs which will carry a reasonable sum for attorney fees in lien cases." 9 Idaho at 369, 74 P. at 960.

In accordance with the view that the statutory forerunner to I.C. § 45-513 applied alike to all debtors against whom a lien was allowed is the case of *Smith v. Faris-Kesl Construction Co.,* 27 Idaho 407, 150 P. 25 (1915). There a subcontractor sought foreclosure on a claim of lien filed against the real property of another party to collect on monies due and owing for labor and materials provided a general contractor for excavation of the real property. The district court determined the amount of unpaid labor and materials, and awarded $900.00 in attorney fees. The district court also found that (1) the general contractor was liable for the lien amount and attorney fees and (2) the lien amount and attorney fees were also a lien on the real property entitled to foreclosure. Thus, according to the entry of judgment, both the general contractor and landowner were liable for the attorney fees. 27 Idaho at 416, 150 P. at 28.

The contractor appealed on the ground that it should not be liable for the attorney fees incurred in foreclosing the lien against the real property. In interpreting what is now I.C. § 45–513, the court stated that Idaho case law tended "to show that the attorney's fee is merged with and becomes a part of the principal debt for which the foreclosure of the lien is sought." 27 Idaho at 424, 150 P. at 30. The court further stated:

> "While said appellant construction company does not own the property against which the lien is sought to be foreclosed, it owes the money sued for, and it is by reason of its failure to pay its debt that the expense of employing respondent's attorneys was incurred. It was made a party defendant and a judgment was procured against it and, as indicated in the foregoing authorities, the attorney's fee is an incident to the judgment.
>
> It has been held, and properly, too, that where the owner of property has been forced to pay attorneys' fees to a successful lien claimant, he can recover back the amount from the contractor who owed the debt for which the lien was foreclosed. (*Covell v. Washburn,* 91 Cal. 560, 27 Pac. 859; *Clancy v. Plover,* 107 Cal. 272, 40 Pac. 394)" *Id.*

Admittedly, the *Smith* case presents a factual pattern dissimilar to the instant case. Nonetheless, it is authority for the proposition advanced by respondents that both a general contractor and the landowner are responsible for the attorney fees incurred in legal proceedings to collect the claim of lien. In this regard, the early case of *De Camp Lumber Co. v. Tolhurst,* 99 Cal. 631, 34 P. 438 (1893), provides further guidance. The only question before the court was whether the lien claimant, a subcontractor, was entitled to costs and a reasonable attorney fee to be enforced against the landowner rather than the principal contractor. The court answered in the affirmative, observing,

> "After the completion of the contract the owner holds the reserved money for payment to the contractor or lien claimant, as the one or the other may prove to be entitled to it. If there be a contest between them in regard to the money, it is a matter for them to settle between themselves, and at their own expense, and with which the owner has no concern. In such a case the owner may and should deposit the money in court, and let the contestants then have their rights determined. In this case there was no contest between the contractor and respondents. By permitting his default to be entered, the contractor, in effect, admitted that respondents were entitled to the money. The appellants, however, retained the money, and apparently without cause or right raised a contest on every point, and fought the case through to the end. By so doing they delayed the respondents in recovering money to which they were justly entitled, and put them to unnecessary expense. Under such circumstances, we think the respondents' costs and attorney's fee were properly allowed and made payable out of the proceeds of the property ordered to be sold. The decree should therefore be affirmed." 34 P. at 439.

■ We find the foregoing language persuasive to the instant case. By permitting the partial summary jugments to be entered against it, the principal contractor R.K. & A. Jones, in effect, admitted that respondents were entitled to the monies claimed due and owing. The appellants, however, retained the money due the principal contractor, and apparently without cause or right contested the garnishment as well as foreclosure proceedings on every point, and litigated the case through the end. By so acting, the appellants delayed the respondents in recovering on the partial summary judgments they were entitled to, and put them to unnecessary legal expense. Under such circumstances, it was proper to allow the respondents attorney fees payable out of the proceeds of the foreclosure sale of the appellants' real property.

■ Two additional points need to be made with respect to the question of the appellants' liability for attorney fees incurred by respondents in the case. First,

the fact that appellants Wright, Wood and Wood were also garnishees does not prevent an award of attorney fees against them as defendants in the lien foreclosure action. Ordinarily, a garnishee is regarded as a stakeholder or innocent party holding property in his possession for the benefit of another; and where the garnishee pays over the amount held by him, he is relieved of all further liability to the garnishing party. *See generally,* 6 Am.Jur.2d, Attachments and Garnishments, §§ 511 and 592 (1963). Notwithstanding these propositions, the singular fact remains that appellants Wright, Wood and Wood were simply not unrelated third party garnishees. They were defendant owners of the land on which the claims of lien were recorded. Their liability for attorney fees was incurred as defendants, not as garnishees.

The second point that needs to be made is that the district court correctly held that respondents did not waive their rights to an attorney fee in the lien foreclosure actions by pursuing collection of the partial summary judgments against R.K. & A. Jones. It is argued that the waiver resulted because of respondents' failure to obtain an award for attorney fees at the time they obtained the partial summary judgments.

■ As the district court noted below, I.C. § 45–515 allows the lien claimant to collect the debt both through foreclosure of the lien and a personal action against the contractor.

> "45–515, Action to recover debt.—Nothing contained in this chapter shall be construed to impair or affect the right of any person to whom any debt may be due for work done or materials furnished, to maintain a personal action to recover such debt against the person liable therefor."

In *Idaho Lumber and Hardware Co. v. DiGiacomo,* 61 Idaho 383, 388, 102 P.2d 637 (1940), the court observed that under then I.C. § 45–515 a lien claimant need not seek payment from the original contractor before enforcing his lien against the real property. Accordingly, the fact that respondents had not yet reduced to judgment

their claims for attorney fees against R.K. & A. Jones does not prevent their obtaining a judgment for those fees against the appellants.

■ Finally, the appellants question the reasonableness of the amount of attorney fees awarded against them. The amount awarded to Acoustic Specialties on the claim of lien, including interest, totalled $55,880.04. The district court awarded an attorney fee of $10,000.00. Thus, the attorney fees award was the equivalent of 17.90% of the value of the lien plus interest. In the Granite Mill case, the amount of the lien plus interest totalled $34,669.94, and the attorney fees award was $6,000.00, or an amount equal to 17.31% of the value of the lien plus interest. Appellants argue the attorney fees awards are excessive. We disagree.

Both the Granite Mill and Acoustic Specialties cases were filed prior to March 1, 1979, the effective date of I.R.C.P. 54(e)(3). Nonetheless, we are of the opinion that the awards of attorney fees in this case were consonant with the guidelines of I.R.C.P. 54(e)(3), that an award be based on a showing and balancing of various factors, including the time expended, the nature and difficulty of the case, the amount recovered, the skill requisite to perform the legal service properly, and other factors showing a relationship between the fee awarded and the facts and circumstances of the particular case.

In respondents' letter briefs dated October 10, 1979, and October 30, 1979, counsel for respondents requested that an award of attorney fees be made in the amount of 20–25% of the actual amount recovered on the liens. Again, by motion on January 21, 1980, counsel for respondents informed appellants that it was seeking attorney fees and would introduce evidence at a hearing for that purpose. Thus, appellants had notice of the amount of attorney fees which respondents were seeking and the manner in which they were computed.

The respondents presented evidence on awards of attorney fees in 141 cases in Bannock County. That evidence showed

that in two cases filed the percentage fee awarded was in excess of the request made. In addition, the trial court had before it a complete record of the lawsuits showing the issues, discovery, research, court appearances, and the extent of negotiations between the parties. The record evidences extensive efforts to foreclose the liens, and provides substantial and competent evidence supporting the awards of attorney fees as reasonable.

■ Finally, we consider respondents' request for an award of attorney fees on appeal. Prior to the enactment of I.C. § 12–121 in 1976, there was no statute which authorized the award of attorney fees on appeal in mechanic's lien foreclosure actions. *See Hendrix v. Gold Ridge Mines, Inc.,* 56 Idaho 326, 54 P.2d 254 (1936). Therefore since there was no other "statute which otherwise provide[d] for the award of attorney's fees," in mechanic's lien foreclosure actions, I.C. § 12–121 authorizes this court to award reasonable attorney fees to the prevailing party. *See, Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979). However, we have reviewed the record in this action and concluded that the standard set out in *Minich* has not been met in this case.

The judgments of the district court are affirmed. Costs to respondents. No attorney fees on appeal.

BAKES, C. J., and DONALDSON, J., concur.

SHEPARD, J., sat but did not participate.

Submitted by McFADDEN, J., prior to his retirement on August 31, 1982.

BISTLINE, Justice, dissenting.

It does not sufficiently appear that the Court fully comprehends the appellant's theory—which I thought well laid out at oral argument and in the briefs submitted, and accordingly believe to be deserving of mention.

The factual background, although somewhat complex, is sufficiently stated in the Court's opinion. The unpaid subcontractors filed liens against the owners of the property for the respective amounts owed them—not by the owners—but by the prime contractor. The law allows them this remedy. In pursuit of it they filed their foreclosure action and asked for attorney's fees, as the law provides. At the same time, however, and in the same action, they sought a monetary judgment against the contractor for the monies not paid, the nonpayment of which was also the basis of their claim of lien and lien foreclosure action. This they could do, but it is at least unusual, as in the ordinary case the owner generally is the ultimate target when the contractor has not paid his materialmen and subcontractors. In the ordinary case, if the contractor has not absconded or is insolvent, the filing of the lien results in the owner paying the amounts due and deducting it, or pressuring the contractor into making payment. From time to time it has been suggested that the statutory lien is a harsh remedy because it makes an owner, who is often unaware and unsuspecting, responsible for unpaid bills that the contractor should have paid—this often · being so notwithstanding that the owner may have advanced to the contractor the full amount of the contract price. On the other hand, it has been recognized that the policy of the statutory remedy is to place some onus on an owner to make his financial arrangements with his contractor in such a manner that assures payment being made to the subcontractors and materialmen.

Setting this controversy apart from most cases and making it complex, confusing, and unique was the employment of the summary judgment procedures. While in any lien foreclosure action the amounts due the lienholders will have to be ascertained, much as in a mortgage foreclosure action, wherein in both a final decree of foreclosure and order of sale of the property will be entered, no monetary judgment can be entered against the owner. This is an important point. Here, however, within the confines of the lien foreclosure action a judgment was taken, not against the owner,

but against the contractor. I do not see that as improper because the contractor does owe the money and the lien-claimants are entitled to such a judgment. For one thing, in the event the lien was untimely or imperfectly filed, the subcontractor will not be able to gain any relief from the owners, and will have no resort but to pursue the contractor for the unpaid debt. The statute, I.C. § 45-515, clearly contemplates this result and allows the lien-claimant to pursue the contractor.

In the ordinary case the claimant would maintain his foreclosure against the owner on the equity side of the court, and pursue his claim for a monetary judgment against the owner at law—in which action he would even be entitled to a jury trial. In this case, I have no problem with the fact that the two courses were followed in the one action naming both the contractor and the owner. However, prior to any lien foreclosure decree being entered against the owner, judgment was taken against the contractor, executions issued on that judgment, and the full amount of the judgments tendered and accepted. As I say, this does not seem to be the ordinary case.

Now, had there been the two independent actions, and had a monetary judgment been entered against the contractor, and satisfied, could the unpaid subcontractors continue with their lien foreclosure action? I would incline to think it highly doubtful, and at the least a close question. The statute declares that the right to lien against the property, and bring a foreclosure action, does not impair an *in personam* action "to recover such debt" from the contractor. Once the debt is recovered it would seem to follow that the filing of the lien and the ensuing foreclosure action would properly be respectively released and dismissed, having served the purpose of providing security for the debt and a stand-by for further processing in the event the *in personam* action for recovery of the debt was not successful.

Until I read the Court's opinion I entertained the thought that such had been and is the appellants' theory. On page six of their brief appellants quote from a letter which was sent to the trial court to resolve any question in the court's mind as to whether the deposited money could be released without all issues having been decided in this multi-issue, multi-party lawsuit:

" 'We realize the Court may not find an election by the Plaintiffs which discharge their claims of lien, but may find the deposit will satisfy the amounts due under the execution lien. We therefore have no objection to the Court's acceptance of our deposit in payment to the Plaintiffs' without discharging the Plaintiffs' claims of lien.' "

Contrary to the view expressed in the Court's opinion, it would seem to follow that appellants were not at all obstructionists, but more than passively cooperative in getting the unpaid judgment paid. Otherwise they would not have volunteered that they were willing to agree that acceptance of the deposited money would not discharge any other remaining issues which might later be pursued.

The letter itself clearly demonstrates the theory upon which the appellants proceeded in paying the judgment, an "election" as they put it, and as it seemingly was. Yet, the appellants will not see the Court's opinion as understanding or meeting the thrust of their theory. Although case law holds that a contractor can be held liable for attorney's fees assessed to the owner in a foreclosure action on the owner's land, that principle hardly applies to determining the legal effect of a satisfied judgment taken against the contractor for the unpaid amounts which precipitated the filing of the lien against the owner.

While I incline to the belief that, when, as in this case, the lien was justifiably filed as was the suit filed for its foreclosure, and hence some attorney's fees for the action taken should be recoverable, it is doubtful that the amount involved should be a factor when the debt was recovered from the contractor—thereby ceasing all necessity for future action pointed toward collecting the debt. However, a onesided dissertation upon that issue, with no other member of

the Court interested therein would tend to be an exercise in futility. We were presented with an interesting question of law which in my opinion goes unsatisfactorily answered. The trial court had no trouble in grasping the problem presented, and dealt with it carefully in a written Memorandum Decision, stating its view that there was no presentation of authority or reason "to conclude that the *attempted enforcement* of the personal judgment would preclude any further action on the lien." (Emphasis added.) I would agree as to *attempted enforcement.* And, I am not surprised at the lack of any case involving the rather elementary proposition that, although relief may be *sought* against two or more obligors, and judgment taken against two or more obligors, there can only be one recovery—double recovery being prohibited. The fact here is that the monetary judgment was entered, execution did issue, there were garnishment proceedings, and the judgment was extinguished by satisfaction. Perhaps it was not a situation in which the lien claimants were put to an "election," as the term is used, or in which they necessarily made an "election," but they did opt to push for collection of the monetary judgment, did collect it, and therefore no longer could foreclose a lien for that same amount.

I am unable to agree with the Court's proposition that I.C. § 12–121 can be so interpreted and applied so as to allow the granting of attorney's fees on appeal in a mechanic's and materialmen's lien foreclosure action. As the Court itself notes, the legislature has, separate from I.C. § 12–121, addressed the question over and above that, the reasoning of the dissents of Donaldson, J., and Bistline, J., in *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979), is rather persuasive that I.C. § 12–121 was not directed toward awarding attorney's fees at the appellate level.