40 P.3d 96

**L & W SUPPLY CORPORATION d.b.a Gem State Acoustical & Drywall Supply, a Delaware corporation, Plaintiff–Appellant–Cross Respondent,**

v.

**The CHARTRAND FAMILY TRUST; Total American, Inc.; and Does I Through Z, Defendants–Respondents–Cross Appellants.**

No. 26541.

Supreme Court of Idaho,
Idaho Falls, September 2001 Term.

Jan. 17, 2002.

Hawley, Troxell, Ennis & Hawley, Boise, for appellant-cross respondent. Lynnette M. Davis argued.

Anderson, Nelson, Hall, Smith, P.A., Idaho Falls, for respondents-cross appellants. Joel E. Tingey argued.

KIDWELL, Justice.

L & W Supply Corporation d.b.a. Gem State Acoustical and Drywall Supply (Gem State) brought an action to foreclose a materialman's lien against a home owned by the Chartrand Family Trust (Chartrand). The district court granted summary judgment for Chartrand and dismissed Gem State's claim, finding that Gem State's lien was invalid, because Gem State was too remote from Chartrand in order to enjoy the benefits of Idaho's materialman's lien statute, I.C. § 45–501. Gem State has appealed the grant of summary judgment. Chartrand has cross-appealed the district judge's denial of its motion for attorney fees and costs. We agree that Gem State's claim of lien was invalid and that Chartrand was entitled to an award of costs at trial.

## I.

### FACTS AND PROCEDURAL BACKGROUND

The following facts were adapted from the district court's first "Memorandum Decision and Order on Summary Judgment Motions." Chartrand hired a general contractor to build a steel-frame house near Salmon, Idaho. The general contractor engaged Total American, Inc. (Total American) to supply the steel framing materials for the home. Total American, in turn, engaged the appellant, Gem State, to supply the requisite materials. Gem State now seeks to enforce a lien against the property, under I.C. § 45–501.

In its early dealings with Total American, the general contractor requested a bid for a "complete steel package" to be used in the construction of the house. Total American's

bid indicated that the company could provide a "complete framing package" to include "[e]ngineered, detailed drawings for the required design criteria," "[s]tructural CAD drawings depicting each components (sic) length and gauge in all load bearing walls as per the architectural plans provided," "[c]ross sections throughout the structure showing connection locations and attachment procedures," and "[t]echnical assistance available by telephone/fax." The bid further included all of the necessary steel components, including steel studs, clips and fasteners, and pre-cut materials for header and truss assemblies to be fabricated at the building site. Bill Ladd, Total American's officer, negotiated with the general contractor, reviewed house plans provided by the general contractor, and developed a list of materials. Total American agreed to provide those materials to the general contractor.

In determining the necessary materials, Ladd used standard load tables provided by steel manufacturers. He created his own Computer Aided Drafting (CAD) drawings to identify load-bearing walls, floor systems, and components for the framing system. The general contractor participated in finalizing the drawings and made significant changes to the design. Ladd also created detailed instructions about assembly and conveyed those instructions to the general contractor. Neither Ladd nor Total American participated in any on-site construction. Total American charged the general contractor a flat, agreed-upon rate for its work in identifying components, assembling the materials, and preparing the instructions.

In August of 1998, Total American submitted its materials list to Gem State. Gem State was to supply the components and deliver them directly to the building site. Gem State did not have the materials in stock, but rather ordered the materials from its supplier, Knorr Steel Framing Systems (Knorr). Knorr caused the materials to be delivered to the job site on August 28, 1998, and the components were eventually incorporated into the structure of the house.

Shortly after the materials were delivered, Knorr billed Gem State, and Gem State billed Total American. Although Total American was paid by the general contractor, it failed to pay Gem State. Gem State filed a notice of a lien, under I.C. § 45–501(hereafter "materialman's lien"), against the Chartrand property. On February 16, 1999, Gem State brought this action to foreclose the lien. In May of 1999, Gem State sent another invoice to Total American in the amount of $19,421.34. The invoice identified some late charges, but it did not notify Total American that a lien had been filed or that Gem State would require payment of its attorney fees. On June 9, 1999, Total American submitted a check for the full amount of the invoice. On the check, Total American included a condition that acceptance of the check would constitute a full release by Gem State. On June 10, Gem State's attorney contacted Total American and notified the company that the check did not satisfy the full amount of the lien. Gem State refused to grant a release or negotiate the check unless Total American agreed to pay Gem State's attorney fees. Total American refused.

On October 14, 1999, the district judge denied Gem State's and Chartrand's cross-motions for summary judgment. After further discovery, the parties again filed cross-motions for summary judgment. On April 4, 2000, the district judge denied Gem State's motion and granted Chartrand's motion for summary judgment, dismissing Gem State's claim and declaring the lien void. On May 31, 2000, the district judge denied Chartrand's motion for attorney fees and costs. Gem State has appealed the grant of Chartrand's motion for summary judgment. Chartrand has cross-appealed, challenging the district judge's denial of its motion for costs and attorney fees.

## II.

### STANDARD OF REVIEW

■ On appeal from the grant of a motion for summary judgment, this Court employs the same standard to be used by the district court originally ruling on the motion. *Daugharty v. Post Falls Highway Dist.*, 134 Idaho 731, 733, 9 P.3d 534, 536 (2000). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

■ When both parties file motions for summary judgment relying on the same facts, issues, and theories, essentially the parties stipulate that there is no genuine issue of material fact that would preclude the court from entering summary judgment. *Daugharty*, 134 Idaho at 733, 9 P.3d at 536. When the parties have so stipulated and when the trier of fact is to be the court, rather than a jury, the trial court is free to arrive at the most probable inferences based upon the evidence before it and grant summary judgment, despite the possibility of conflicting inferences. *See Killinger v. Twin Falls Highway Dist.*, 135 Idaho 322, 324, 17 P.3d 266, 268 (2000); *Brown v. Perkins*, 129 Idaho 189, 191, 923 P.2d 434, 436 (1996); *Riverside Dev. Co. v. Ritchie*, 103 Idaho 515, 519, 650 P.2d 657, 661 (1982).

■ The parties both moved for summary judgment centering on whether Total American was an agent or a subcontractor, based on their respective interpretations of the facts and law relating to I.C. § 45–501, and the case was to be tried without a jury. Therefore, the district judge was free to resolve any conflicting inferences arising from the facts presented. Review of the trial court's resolution of those conflicting inferences is limited to whether the record is sufficient to support the trial court's findings. *Cameron v. Neal*, 130 Idaho 898, 900, 950 P.2d 1237, 1239 (1997); *Riverside*, 103 Idaho at 520, 650 P.2d at 662. Determining the meaning of a statute and its application are matters of law over which this Court exercises free review. *Polk v. Larrabee*, 135 Idaho 303, 308, 17 P.3d 247, 252 (2000).

## III.

## ANALYSIS

**A. The District Judge Did Not Err In Holding That Gem State Could Not Utilize The Lien Provisions Of I.C. § 45–501.**

**1. Gem State was too remote from Chartrand or the general contractor to utilize the materialman's lien statute.**

Idaho's materialman's lien statute provides, in relevant part:

Every person ... performing labor upon, or furnishing materials to be used in the construction, alteration or repair of any ... structure ... has a lien upon the same for the work or labor done or professional services or materials furnished, whether done or furnished at the instance of that owner of the building or other improvement or his agent; *and every contractor, subcontractor, architect, builder or any person having charge of ... the construction, alteration or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner for the purpose of this chapter ....*

I.C. § 45–501 (1997) (amended 1998, 2001) (emphasis added).

Gem State argues that the district judge erred in holding that it was too remote from the owner to assert a materialman's lien under I.C. § 45–501. Gem State poses several arguments intended to show that Total American was an agent of Chartrand and that Gem State therefore furnished materials at the instance of an agent of the owner, as contemplated by the statute. Specifically, Gem State argues that that Total American was a subcontractor because it was hired by the general contractor to create engineered drawings, to specify the type and gauge of steel to be used, and to provide all the necessary steel components. Alternatively, Gem State argues that if Total American was not a subcontractor, it was more generally an agent of the owner by virtue of having charge of performing those activities.

Chartrand argues that Total American was merely a material supplier who was filling an order through its supply chain. Therefore, it argues, Gem State was merely a supplier to a supplier, and too remote to utilize the materialman's lien statute.

■ The provisions of I.C. § 45–501 "are to be liberally construed in the favor of the persons who perform labor upon or furnish materials to be used in the construction, alteration, or repair of a building or struc-

ture." *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 132 Idaho 754, 760, 979 P.2d 627, 633 (1999) (citing *Pierson v. Sewell*, 97 Idaho 38, 539 P.2d 590 (1975); *Dybvig v. Willis*, 59 Idaho 160, 82 P.2d 95 (1938)). This rule has resonated throughout Idaho case law for many years, based upon the following reasoning:

> Under this statute the legislature evidently intended to grant the right to claim a lien to any person who contributes labor or materials for the construction, alteration, or repair of a building or structure upon real property.... [I]t was clearly the intent of the legislature to grant an absolute lien direct upon the property, to the person who performs labor upon, or furnishes materials to be used in a building, structure or other improvement without reference to whether such person performing such labor, or furnishing material, is an original contractor or subcontractor, or a laborer or a materialman, and without reference to whether there is anything due the original contractor from the person or corporation constructing such building or other improvement.

*Great Plains*, 132 Idaho at 761, 979 P.2d at 634 (citing *Hill v. Twin Falls Salmon River Land and Water Co.*, 22 Idaho 274, 279, 125 P. 204, 206 (1912)). This rule, however, "does not permit the court to create a lien where none exists or was intended by the legislature." *Great Plains*, 132 Idaho at 760, 979 P.2d at 633 (citing *Boone v. P & B Logging Co.*, 88 Idaho 111, 397 P.2d 31 (1964)). Therefore, while "this section will be liberally construed," "the statutory requirements must be substantially complied with in order to perfect a valid mechanic's lien." *Pierson*, 97 Idaho at 41, 539 P.2d at 593 (referring to "mechanic's" liens under I.C. § 45–501).

Application of the statute begins with the language at issue: "and every contractor, subcontractor, architect, builder or any person having charge of ... the construction, alteration or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner for the purpose of this chapter." I.C. § 45–501.

■ Where the language of a statute is clear and unambiguous, statutory construction is unnecessary, and this Court need only determine the application of the words to the facts of the case. *Hamilton v. Reeder Flying Serv.*, 135 Idaho 568, 572, 21 P.3d 890, 894 (2001). A statute is ambiguous where the language is reasonably capable of more than one conflicting construction. *Struhs v. Protection Techs. Inc.*, 133 Idaho 715, 718, 992 P.2d 164, 167 (1999). However, "[a]mbiguity is not established merely because differing interpretations are presented to a court; otherwise, all statutes subject to litigation would be considered ambiguous." *Hamilton*, 135 Idaho at 572, 21 P.3d at 894. Therefore, "[t]he interpretation should begin with an examination of the literal words of the statute, and this language should be given its plain, obvious, and rational meaning." *Williamson v. City of McCall (In re Williamson)*, 135 Idaho 452, 455, 19 P.3d 766, 769 (2001).

■ A subcontractor is defined by Black's Law Dictionary as:

> One who takes portion of a contract from principal contractor or another subcontractor. One who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance. One who takes from the principal or prime contractor a specific part of the work undertaken by the principal contractor.

Black's Law Dictionary 1424 (6th ed.1990). Similarly, the definition of a subcontractor for the purposes of Idaho's Public Contracts Bond Act, I.C. §§ 54–1925 to 54–1930 et seq., has been stated as: "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract." *LaGrand Steel Prod. Co. v. A.S.C. Constructors, Inc.*, 108 Idaho 817, 818, 702 P.2d 855, 856 (Ct.App. 1985).

■ Gem State argues that the communications between the general contractor and Total American demonstrate that the two intended to enter into a relationship as general contractor and subcontractor. However, regardless of the intent behind the words utilized in communications between the par-

ties, their actions provide more persuasive evidence of the nature of their relationship. The record reveals that the work actually performed by Total American does not support the "subcontractor" characterization. The general contractor designed the building, and his plan outlined the location of the load-bearing walls and the material lengths. Total American reviewed standard steel load tables and compiled a list of components after reviewing the general contractor's plans. Total American ordered the materials from Gem State, who in turn ordered them from its supplier, Knorr Steel. The materials delivered by Knorr were all standard materials, some of which were cut by Knorr, but much of which required cutting and altering by the general contractor at the job site. Total American's drawings were simply re-creations of the contractor's plans. The components secured by Gem State from the manufacturer were not specially manufactured or unique components. They were off-the-shelf items and could have been obtained from any other supplier. Total American did not perform any labor on the job site. Total American did not fabricate or alter any of the material used in the home construction, and did not ever physically handle the building material. There was substantial and competent evidence to support the district judge's finding that Total American was not a subcontractor.

This conclusion is not contrary to *Acoustic Specialties v. Wright*, 103 Idaho 595, 651 P.2d 529 (1982), as Gem State argues. In *Acoustic Specialties*, this Court referred to a material supplier as a "subcontractor," where the supplier had a contract with the general contractor to supply materials for the construction of a hotel. 103 Idaho at 597, 651 P.2d at 531. However, in that case the term "subcontractor" was only used in passing. The question of whether either party was indeed a subcontractor was not contested in that case, and the Court made no effort to define the term. Similarly, in *Gem State Lumber Co. v. Witty*, 37 Idaho 489, 496, 217 P. 1027, 1028 (1923), this Court stated that "appellant lumber company was a subcontractor in furnishing material for this building," when the lumber company acted as any other typical lumber supplier, providing lum-

ber for the construction of a building at the behest of a general contractor. Again in that case, the term "subcontractor" was only used in passing. The question of whether the lumber company was a subcontractor was not an issue before the Court.

■ As to Gem State's argument that Total American was more generally an agent of Chartrand, the district judge's conclusion that Total American did not have charge over any part of the construction is supported by substantial and competent evidence in the record. Total American simply compiled a list of materials and transmitted that list to a person further down the supply chain.

In sum, although Total American performed some computations regarding steel gauges and coordinated with the general contractor in finalizing the design drawings, its performance only amounted to the legwork necessary in order to submit a finalized bid. Total American was not a subcontractor or otherwise an agent of Chartrand. Therefore, Gem State did not provide the materials at the instance of an agent of Chartrand, and Gem State was too remote to utilize the lien provisions of I.C. § 45–501. Consequently, summary judgment was appropriate.

## 2. The open account doctrine does not provide a basis for Gem State's assertion of a lien.

■ Gem State further argues that the application of what has been called the "open account doctrine" dictates that it was not too remote to assert a lien claim. The open account doctrine provides that when a party supplies materials or labor in reliance upon the general credit of the agent requesting it, rather than looking to the property for security, the party so providing the materials or labor may not assert a lien. *See Great Plains*, 132 Idaho at 772, 979 P.2d at 645. Here, Gem State gathered information about the property before delivering materials, and, as is customary in its operations, Gem State intended to look to the property for security. Thus, the doctrine would be inapplicable to *bar* Gem State's lien claim.

■ However, contrary to Gem State's argument, the inapplicability of the open ac-

count doctrine to *bar* Gem State's claim cannot be twisted to mandate the doctrine's applicability in *support* of its claim. The doctrine does not provide an independent basis for a creditor to assert a lien; rather, it is a defense to be asserted by a lien debtor. *See Great Plains,* 132 Idaho at 772, 979 P.2d at 645 (referring to the doctrine as the "open account defense" to be asserted by a defendant). It has developed to clarify the language of I.C. § 45–501, in effect denying a lien to parties who provide materials in exclusive reliance on a contractor's general credit. However, it does not address the situation where parties do not provide material in exclusive reliance on a contractor's general credit. In those cases, the doctrine is merely inapplicable to the interpretation of the statutory language.

3. **The Court declines to address whether there was a proper tender of payment to extinguish any lien that existed.**

Chartrand argues that Gem State's lien was extinguished when Total American tendered full payment of the underlying amount owed to Gem State, on June 9, 1999. Because no lien arose in Gem State's favor, this Court need not address this issue.

## ISSUES ON CROSS APPEAL

B. **The District Judge Did Not Err In Denying Chartrand's Motion For Attorney Fees, But Costs Should Have Been Awarded.**

 Gem State argues that Chartrand was not entitled to attorney fees or costs at trial because Chartrand was not the prevailing party on summary judgment. In his "Memorandum Decision And Order Denying Attorney Fees," the district judge determined that Chartrand was the prevailing party, because he had invalidated Gem State's lien claim. However, Gem State points out that the judge denied Chartrand's first motion for summary judgment on its slander of title claim and declined to address that claim in his decision on the second cross-motions for summary judgment. Gem State argues that, because Chartrand lost on its counterclaim, it cannot be the prevailing par-

ty. "Determination of who is a prevailing party is committed to the sound discretion of the trial court and will not be disturbed absent abuse of discretion." *Bouten Constr. Co. v. H.F. Magnuson Co.,* 133 Idaho 756, 767, 992 P.2d 751, 762 (1999). In determining whether the trial court has abused its discretion, this Court applies a three-factor test: "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Id.*

The district judge recognized that the determination of the prevailing party was an issue of discretion, stating "[t]he Court determines the prevailing party at its discretion, after it applies the criteria set forth in I.R.C.P. 54(d)(1)(B)." The fact that Chartrand did not secure a ruling from the judge on its slander of title claim does not logically negate Chartrand's success in defending against the lien foreclosure action. Once the judge determined that the lien was invalid, it was no longer necessary for Chartrand to prevail on its slander of title claim in order to correct the state of its title to the property. In determining that Chartrand was the prevailing party, the district judge reached a conclusion that fell within the bounds of his discretion.

Chartrand argues that the district judge, having found Chartrand to be the prevailing party, erred in denying its motion for attorney fees and costs.

1. **Costs**

"Except when otherwise limited by these rules, costs shall be allowed as a matter of right to the prevailing party or parties." I.R.C.P. 54(d)(1)(A). Chartrand moved for an award of costs associated with the acquisition of the deposition testimony of Total American's Bill Ladd and for filing fees. The district court failed to make a ruling upon this motion, and thus effectively denied it. These are costs of the type allowed as a matter of right under I.R.C.P. 54(d)(1)(C).

As the prevailing party, Chartrand was entitled to an award of costs.

### 2. Attorney fees

"[I]n any civil action the court may award reasonable attorney fees ... to the prevailing party ... when provided for by any statute or contract." I.R.C.P. 54(e)(1).

■ Chartrand requested attorney fees pursuant to I.C. § 45–513. The district judge held that, although Chartrand was the prevailing party, it was not entitled to an award of attorney fees under that section.

■ Idaho Code section 45–513 provides: Any number of persons claiming liens against the same property may join in the same action, and when separate actions are commenced the court may consolidate them. The court shall also allow as part of the costs the moneys paid for filing and recording the claim, and reasonable attorney fees.

"It is well settled that in lien foreclosure actions, the recovery of attorney fees is incidental to the foreclosure." *Great Plains,* 132 Idaho at 771, 979 P.2d at 644. However, the statute does not address whether attorney fees are recoverable by the *defendant* in a lien foreclosure action.

In holding that I.C. § 45–513 is constitutional, this Court has indicated that the section and its predecessors do not provide recovery of attorney fees for defendants. *See Harrington v. McCarthy,* 91 Idaho 307, 312, 420 P.2d 790, 795 (1966); *Thompson v. Wise Boy Mining and Milling Co.,* 9 Idaho 363, 370, 74 P. 958, 961 (1903). Moreover, I.C. § 45–513, read in its entirety, refers only to persons filing and bringing claims. Nowhere does the section mention defendants; rather, it provides a benefit to *plaintiffs* seeking to enforce their rights under I.C. § 45–501. Consequently, attorney fees under I.C. § 45–513 were properly denied.

Chartrand also requested attorney fees under "I.C. § 12–120." The only portions of I.C. § 12–120 that are relevant to Chartrand's motion for fees are subsections (1) and (3). This Court construes I.C. § 12–120 narrowly. *Aberdeen–Springfield Canal Co. v.*

*Peiper,* 133 Idaho 82, 94–95, 982 P.2d 917, 929–30 (1999).

Section 12–120(1) provides, in relevant part, that "in any action where the amount pleaded is twenty-five thousand dollars ($25,-000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney fees." Gem State argues, and the district judge held, that Chartrand could not recover attorney fees under I.C. § 12–120(1), because Gem State did not plead an amount of $25,000 or less.

Enforcement of I.C. § 45–501 is "an in rem proceeding which creates no personal charge against the owner of the property, but which creates a lien against the property itself, to the extent of its value, in order to secure payment to the lien claimant for his labors or materials used to improve the property." *Pierson,* 97 Idaho at 44, 539 P.2d at 596. Because I.C. § 12–120 is to be construed narrowly, "[t]his Court has placed a premium on examining the pleadings when evaluating [its] applicability." *Aberdeen–Springfield,* 133 Idaho at 95, 982 P.2d at 930. The pleadings must precisely comply with the statutory mandate and formally plead an amount of $25,000 or less. *See id.; Cox v. Mueller,* 125 Idaho 734, 736, 874 P.2d 545, 547 (1994). Although Gem State's pleadings reference the proper monetary amount, the prayer for relief, excepting for the quantum meruit claim voluntarily dropped by Gem State, does not truly seek monetary damages, but instead seeks enforcement of a statutory right to sell the property. Therefore, attorney fees under I.C. § 12–120(1) were properly denied.

■ Section 12–120(3) provides for recovery of attorney fees "in any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty ... and in any commercial transaction." "A court is not required to award reasonable attorney fees every time a commercial transaction is connected with a case. ... The critical test is whether the commercial transaction comprises the gravamen of the lawsuit." *Bingham v. Montane Res. Assocs.,* 133 Idaho 420, 426, 987 P.2d 1035, 1041 (1999).

The transactions related to the steel materials did not comprise the gravamen of this action. The gravamen was the in rem enforcement of a statutory claim, and, as this Court has held, "[a]ttorney fees under I.C. § 12–120(3) are not available when the claim is based on a statutory provision, even when the underlying action depends on contract." *Shay v. Cesler*, 132 Idaho 585, 588, 977 P.2d 199, 202 (1999). Consequently, attorney fees under I.C. § 12–120(3) were properly denied.

## C. Chartrand Is Not Entitled To Attorney Fees On Appeal Pursuant To I.C. § 12–120(1).

Chartrand seeks an award of attorney fees on appeal pursuant to I.C. § 12–120(1). For the same reasons attorney fees were not available under I.C. § 12–120(1) at trial, they are not available on appeal.

## IV.

## CONCLUSION

Because Total American was not an agent of the owner under I.C. § 45–501, Gem State was not entitled to a materialman's lien for supplying material at Total American's request. Accordingly, Chartrand was entitled to summary judgment as a matter of law. The district court did not err in denying Chartrand's motion for attorney fees, but the court erred in denying Chartrand's motion for costs. The order of the district court is affirmed except for its denial of Chartrand's motion for costs, and the case is remanded for a determination of the amount of costs to be awarded. No attorney fees are awarded on appeal. Costs are awarded to respondent Chartrand on appeal.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and EISMANN CONCUR.