IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 40150

| | | |
|---|---|---|
| SID WURZBURG, | ) | 2013 Opinion No. 46 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: August 21, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| KOOTENAI COUNTY, IDAHO, acting | ) | |
| through THE BOARD OF COUNTY | ) | |
| COMMISSIONERS sitting as THE BOARD | ) | |
| OF EQUALIZATION, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Carl B. Kerrick, District Judge.

Order affirming valuations of property, affirmed in part, reversed in part, and case remanded.

Sid Wurzburg, Spirit Lake, pro se appellant.

Barry McHugh, Kootenai County Prosecuting Attorney; John A. Cafferty, Civil Deputy Prosecuting Attorney, Coeur d'Alene, for respondent. John A. Cafferty argued.

_____

GUTIERREZ, Chief Judge

Sid Wurzburg, co-owner of a vacant lakefront parcel, appeals from the district court's order affirming valuations of the property determined by the Kootenai County Assessor. Wurzburg primarily asserts that the district court erred by holding Wurzburg to the wrong burden of proof and by finding that the assessor's method of valuation was appropriate to reflect the market value of the property. For the reasons set forth below, we affirm in part, reverse in part, and remand the case for entry of an amended order.

## I.

## FACTS AND PROCEDURE

Wurzburg owns a one-eighteenth property interest in a vacant waterfront parcel adjacent to Spirit Lake in Kootenai County, Idaho. In 2010, the Kootenai County Assessor valued the

property at $226,110 ($224,640 for the land and $1,470 for the improvements) if it was a buildable parcel. Wurzburg agrees that amount is the appropriate valuation if the parcel was buildable. It is undisputed, however, that the parcel is not buildable, meaning it is not currently or readily suitable to support a residence owing to the facts that no sewer is available and no onsite drain field for a septic tank is possible because of the parcel's proximity to Spirit Lake. As a nonbuildable property, it is subject to a reduction in value, or discount rate, from the buildable value assessment. The conflict between Wurzburg and Kootenai County arose because Wurzburg believes the reduction of value of the property should have been greater than the reduction applied by the county assessor. Wurzburg contends the value of the property should have been reduced by 66 2/3% for a value in 2010 of $76,350. Kootenai County reduced the value of the property by 50% for a value in 2010 of $113,790.[1] Wurzburg appealed the county assessor's 2010 valuation to the Kootenai County Board of Equalization (BOE), which upheld the assessor's determination. Wurzburg again appealed, and the Board of Tax Appeals (BTA) affirmed.

While the appeal was pending before the BTA, Kootenai County issued 2011 property valuations. The assessor determined the parcel's value in 2011 was $96,912, again applying a 50% reduction in value for lack of buildability. Wurzburg appealed the county assessor's 2011 valuation. He again agreed with the assessed value were the parcel buildable, but argued the value should be fixed at $63,648, applying the 66 2/3% reduction. The BOE upheld the assessor's 2011 valuation after conducting a hearing.

Thereafter, Wurzburg appealed both the 2010 and 2011 valuations to the district court.[2] The appeals were consolidated. After a de novo trial, held pursuant to Idaho Code § 63-3812, the district court affirmed both tax year valuations. It issued amended findings of fact, conclusions of law, and an order from which Wurzburg timely appeals.[3] The primary issues

---

[1]    In reaching these numbers, each party applied the respective reduction rate to only the land value and then added the value of the improvements upon the property back in to arrive at the total value.

[2]    Wurzburg did not appeal the 2011 valuation to the Board of Tax Appeals.

[3]    Pursuant to Idaho Appellate Rule 11(a)(2), Wurzburg can appeal from the district court's order affirming the Board of Equalization and Board of Tax Appeals valuations from 2010 and

2

Wurzburg presents on appeal are the burden of proof to which the district court held Wurzburg and the method of determining the appropriate reduction in valuation used by the Kootenai County Assessor. Additionally, Wurzburg challenges the use of a matched pair analysis to support the 50% reduction, asserts the district court erred in finding property values, and asserts the district court erred by applying Idaho Code § 63-3813 and freezing the property value for the subsequent year.

## II.

## ANALYSIS

### A.    Standard of Review

Where the district court conducts a trial de novo pursuant to Idaho Code § 63-3812(c) in an appeal from a BTA decision, this Court defers to the district court's findings of facts that are supported by substantial evidence, but exercises free review over the district court's conclusions of law. *Kimbrough v. Idaho Bd. of Tax Appeals*, 150 Idaho 417, 419-20, 247 P.3d 644, 646-47 (2011); *Canyon Cnty. Bd. of Equalization v. Amalgamated Sugar Co., LLC*, 143 Idaho 58, 60, 137 P.3d 445, 447 (2006). The interpretation of a statute is a question of law over which we exercise free review. *Kimbrough*, 150 Idaho at 420, 247 P.3d at 647.

### B.    Burden of proof

Wurzburg argues the district court erred in determining the burden of proof applicable in this case by applying the clear and convincing evidence standard set forth in *Kimbrough*, 150 Idaho at 421-22, 247 P.3d at 648-49. Wurzburg challenges the district's court's presumption that the assessor's valuations are correct and, in accordance with *Kimbrough*, could only be overcome by showing it was "manifestly excessive, fraudulent or oppressive; or arbitrary, capricious, and erroneous resulting in discrimination against the taxpayer." *Id*. Wurzburg asserts the clear and convincing evidence standard in *Kimbrough* is the standard of proof for *appellate review*, but the applicable burden of proof at *trial* before the district court is the preponderance of the evidence test, pursuant to Idaho Code §§ 63-511(4) and 63-3812(c). Wurzburg challenges all findings of fact and conclusions of law drawn under the misapplied burden of proof.

---

2011. Rule 11(a)(2) provides that an appeal may be taken from any "[d]ecisions by the district court dismissing, affirming, reversing or remanding an appeal."

Kootenai County asserts that, in looking at the language in the district court's order in context, the district court found that Wurzburg did not meet the lower preponderance of the evidence test. Although Kootenai County concedes that the district court recited a hybrid burden of proof, comingling the preponderance of the evidence test with the standard in *Kimbrough*, the County asserts the error is harmless when considering the order as a whole and how the district court applied the burden of proof.

Idaho Code § 63-511(4), governing appeals from a county board of equalization, provides in relevant part:

> In any appeal taken to the board of tax appeals or the district court pursuant to this section, the burden of proof shall fall upon the party seeking affirmative relief to establish that the valuation from which the appeal is taken is erroneous, or that the board of equalization erred in its decision regarding a claim that certain property is exempt from taxation, the value thereof, or any other relief sought before the board of equalization. *A preponderance of the evidence shall suffice to sustain the burden of proof.* The burden of proof shall fall upon the party seeking affirmative relief and the burden of going forward with the evidence shall shift as in other civil litigation.

(Emphasis added.) Similarly, Idaho Code § 63-3812(c) puts forward a taxpayer's burden of proof on appeal from a BTA decision:

> Appeals may be based upon any issue presented by the appellant to the board of tax appeals and shall be heard and determined by the court without a jury in a trial de novo on the issues in the same manner as though it were an original proceeding in that court. The burden of proof shall fall upon the party seeking affirmative relief to establish that the decision made by the board of tax appeals is erroneous. *A preponderance of the evidence shall suffice to sustain the burden of proof.* The burden of proof shall fall upon the party seeking affirmative relief and the burden of going forward with the evidence shall shift as in other civil litigation.

(Emphasis added.) These statutes make clear that Wurzburg had the burden, both before the BTA and in district court, to show that the valuations were erroneous by only a preponderance of the evidence.[4]

---

[4]     *See also* Statement of Purpose, RS 12964, H.B. No. 302 (2003). In regards, to the amendments to Idaho Code §§ 63-409, 63-502, 63-511 and 63-3812, the Idaho Legislature stated:

> This legislation changes the legal standard from one that requires proof that an assessment is manifestly excessive, arbitrary and capricious, or fraudulent and oppressive, to one that requires simply that the assessment is erroneous. It

4

In *Kimbrough*, without citing sections 63-511(4) and 63-3812(c), the Idaho Supreme Court stated that a party challenging an assessed valuation must prove by clear and convincing evidence that the valuation was "manifestly excessive, fraudulent or oppressive; or arbitrary, capricious and erroneous resulting in discrimination against the taxpayer." *Kimbrough*, 150 Idaho at 421-22, 247 P.3d at 648-49. Despite indicating and applying a clear and convincing evidence burden of proof in *Kimbrough*, the Idaho Supreme Court specifically noted the taxpayer's burden of proof as being a preponderance of the evidence in *PacifiCorp v. Idaho State Tax Comm'n*, 153 Idaho 759, 767, 291 P.3d 442, 450 (2012). In *PacifiCorp*, even at the appellate level, the Supreme Court reviewed whether the plaintiffs met their burden by a preponderance of the evidence, without citation to the "manifestly excessive" or "clear and convincing evidence" language found in the Court's prior *Kimbrough* opinion. In light of sections 63-511(4) and 63-3812(c) and the *PacifiCorp* Court's recognition of the standard contained therein, the burden of proof for a taxpayer both at the trial and appellate levels is to show a valuation is erroneous by a preponderance of the evidence. A valuation is erroneous if it is not supported by substantial and competent evidence, *see PacifiCorp*, 153 Idaho at 767, 291 P.3d at 450; fails to reflect the fair market or full cash value of the property, *see Kimbrough*, 150 Idaho at 422, 247 P.3d at 649; or is a result of the misapplication of a valuation method, *see Chandler v. Chandler*, 136 Idaho 246, 250, 32 P.3d 140, 144 (2001).

Here, the district court directly cited the preponderance of the evidence burden of proof in sections 63-511 and 63-3812, reciting section 63-511 in full with a following reference to the latter section. The district court also recited the clear and convincing evidence standard set forth in *Kimbrough*. In concluding that Wurzburg did not meet the burden of proof, the district court stated:

> The sales-comparison approach which is applied by the Kootenai County Assessor's office is one of the appraisal methods that have been adopted by the Idaho State Tax Commission. The burden of proof falls on the Petitioner to establish, through a preponderance of the evidence, that the valuation is erroneous. Further, the assessor's valuation is presumed to be correct. In the case at hand, while the Petitioner has presented testimony of an appraiser who states

changes the burden of proof to satisfy that standard from a "clear and convincing" burden to the normal "preponderance of the evidence" standard applicable to most civil cases.

5

that he would apply the sales-comparison approach in a different manner, the Petitioner has failed to show that the assessor has erred in his application of the sales-comparison method. The assessor presented a thorough analysis which supports the application of a reduction in value at fifty percent. Further, there is no evidence in the record which establishes that the assessor's determination was "manifestly excessive, fraudulent or oppressive; or arbitrary, capricious and resulting in discrimination against the taxpayer."

(Citations omitted.) The district court additionally noted Wurzburg did not establish that the assessor's use of other lakefront properties (in comparison with the parcel at issue) was an incorrect application of the sales comparison approach, "let alone manifestly excessive, fraudulent or oppressive, arbitrary or capricious." Further, the district court specifically stated, "Petitioner has not established the appraisal fails to reflect the full-market or fair cash value of the property."

Although citing both burdens of proof in the statutes and in *Kimbrough*, the language in the district court's order shows that the evidence failed to meet the lower burden of proof. As noted above, it was Wurzburg's burden to show the valuations by the assessor were erroneous. The district court made specific findings that the valuations were supported by substantial and competent evidence and Wurzburg did not show that the valuations failed to reflect the fair market value of the property or that the assessor's use of comparable properties in determining the valuations was a misapplication of the valuation method. Any error in citing to the burden of proof in *Kimbrough* was harmless, as it was only after the district court made specific findings in relation to the valuations that it addressed the higher burden of proof.

## C.     Method of Determining the Reduction in Value of the Parcel

Real property subject to property taxation is assessed annually at market value. I.C. § 63-205. Market value for property tax assessment purposes is defined by statute:

"Market value" means the amount of United States dollars or equivalent for which, in all probability, a property would exchange hands between a willing seller, under no compulsion to sell, and an informed, capable buyer, with a reasonable time allowed to consummate the sale, substantiated by a reasonable down or full cash payment.

I.C. § 63-201(15). The Idaho State Tax Commission is empowered to develop regulations for assessing the market value of property for taxation purposes. I.C. § 63-208(1). There are three methods the assessor can rely on to determine market value for assessment purposes set forth within the regulations. These methods are the sales comparison approach, the cost approach, and

the income approach. Idaho Administrative Code (IDAPA) 35.01.03.217.02. In applying any of the methods, the assessor must determine market value through procedures, methods, and techniques recommended by nationally recognized appraisal and valuation associations, institutes, and societies and according to guidelines and publications approved by the State Tax Commission. IDAPA 35.01.03.217.03. In this case, the assessor relied on the sales comparison approach to determine the market value of the subject parcel. The sales comparison approach involves valuing property based on sale prices of comparable parcels.

Wurzburg does not challenge the use of the sales comparison method, but asserts the way the county assessor employed this approach resulted in erroneous valuations. Wurzburg outlines two sets of standards an assessor may employ to determine a property's value under a sales comparison approach: *ad valorem* mass appraisal standards and market value appraisal standards. Wurzburg contends the county assessor used the prior standards and that assessments under *ad valorem* mass appraisal standards do not measure the fair market value of a parcel in an individual case. He argues that, once he put forward evidence of market value appraisal standards and valuations purportedly arrived at by employing market value appraisal techniques, the County was required to put forth evidence that its valuations met those market value appraisal standards. He asserts the County failed to do so, and therefore, Wurzburg asserts the district court erred in accepting the assessor's valuation method due to a lack of sufficient evidence that the valuations reflected fair market value in this individual case.

Evidence presented by Wurzburg and the County show that the assessor employed the sales comparison approach by looking at sales of nonbuildable, vacant, waterfront properties adjacent to other lakes and comparing them to sales at Spirit Lake to determine whether a 50% reduction in value continued to be a reliable adjustment to apply to nonbuildable properties.[5]

---

[5]     The 50% reduction in value had been applied to Spirit Lake properties in the prior appraisal cycle. Appraisal cycles, which refer to the process of physically appraising all parcels in each county at least once per cycle, are five consecutive years. I.C. § 63-314; IDAPA 35.01.03.316.01.d, 35.01.03.316.02. Each property is given an assessed valuation each year, but the appraisal cycles are the means by which each county can carry out a program of valuation in accordance with Idaho Code § 63-314. After revaluation occurs, sales data is collected for the following five years in order to make market adjustments to determine yearly assessed values until the next cycle occurs. The county assessor conducted a site visit of Wurzburg's property in 2007 as part of the five-year appraisal cycle revaluation project.

The assessor testified that in assessing a property value, he first looks at fairly current sales within the same market, as he did in this case. There were two sales on Spirit Lake occurring in 2004 and 2009 that the assessor took into account. In the first sale, the assessed value was significantly lower than the sales price, coming in at roughly 40% of the sales price. Some evidence showed the buyer was particularly motivated in that sale because he owned an adjacent parcel. The second sale involved a parcel with an assessed value that was significantly higher than the price at which it sold, roughly 157% of the sales price. The county assessor considered it a distress sale based on information from the seller. Because the assessor felt that those two sales were questionable indicia of market value and that he needed more data on current sales, he expanded the geographic area to look at other sales of lakefront property within the county in order to determine whether the 50% reduction in value was a fair indicator of true market value for nonbuildable lots. The county assessor agreed that in a circumstance where enough data is available within the immediate area of the subject parcel, there is no need to go out geographically, as data from the area of the subject parcel is preferable. The assessor testified, however, that he did not look at two 1998 sales of vacant, waterfront property on Spirit Lake because, in his judgment, they were too old to use for current assessed value.

In going out geographically to find comparable sales, the assessor looked again to fairly current sales, occurring mostly between 2007 and 2009, and also took into account characteristics of the properties including utility, beach type, view, road accessibility, and site development. The assessor found eight comparable sales of lakefront properties adjacent to three other lakes within the county, each that had characteristics similar to Wurzburg's property. As an example, in a sale on Twin Lakes, the comparable property was subject to a 56% reduction in value because it was nonbuildable.[6] In using the other sales from a larger geographical area, the assessor also did two matched pair analyses--a method used to find an adjustment for reduction in value. In one of the matched pairs, two very similar vacant, waterfront properties on Coeur d'Alene Lake each sold in 2007, but one was buildable and one was not. The nonbuildable lot sold for roughly 60% of the sale price of the buildable property. The second matched pair

---

[6]     Wurzburg asserts the sales on Twin Lakes accordingly support a 60% reduction in value. He contends that because Twin Lakes is more similar to Spirit Lake than either Coeur d'Alene Lake or Hayden Lake, where the other comparable sales were located, this evidence supports a reduction in value greater than 50%.

analysis, from two sales on Hayden Lake, showed a nonbuildable to buildable ratio of 79%.[7] The assessor found this matched pair data supported a 50% reduction in value on Spirit Lake nonbuildable properties as being fair (accounting for differences in demand and markets among the lakes). The 50% reduction in value was actually a greater reduction than that applied on most of the comparable nonbuildable parcel sales on other lakes, which ranged from roughly 40% to 80% ratios. However, evidence in the record showed that the assessor, based on compiled data, concluded the whole Spirit Lake market was undervalued and, thus, he applied a 50% reduction in value to account for that market. The assessor did not import values from the expanded geographic area to value Spirit Lake parcels; rather, he only took the ratio for reducing the value of nonbuildable properties. In fact, the assessor testified that, in considering all the comparable sales, the assessor was looking at the nonbuildable to buildable ratios applied to make sure that the ratio of 50% on Spirit Lake was accurate.

Wurzburg questioned the county assessor as to why he did not go back further in time and stay with comparable property sales of vacant, nonbuildable waterfront parcels on Spirit Lake. The assessor testified he was aware that going back in time was an accepted standard in certain circumstances, but felt it was not necessary in this case because nonbuildable properties were common to all the lakes in the county and current market data was a better indicator of value. The assessor was also aware that when data is compiled from a larger geographical area, any property valuation must be adjusted for differences in the market unique to each lake. However, the assessor also noted that such market adjustments relate to property value and generally accepted appraisal standards also allow going out geographically to draw an adjustment for reduction of the property value due to nonbuildability. In other words, he testified that property *values* may be different and must be adjusted based on a particular market, but for ratios in terms of a *reduction* of value for nonbuildability, percentages from a wider geographic area can be used.

To introduce additional evidence, Wurzburg presented himself as a witness, not as an expert, but as a property owner providing his opinion as to value. He opined that the assessor, rather than going out geographically, should have gone back in time and used comparable sales only within the Spirit Lake market. Wurzburg challenged the assessor's expansion of the

---

[7]     "Ratio," as used in the record and in this opinion, refers to the percentage of value the nonbuildable property maintains in comparison to the value of buildable land.

geographical area because the markets of each lake are different. Wurzburg presented evidence that according to market value appraisal standards, as opposed to *ad valorem* mass appraisal standards, one can go back further in time to find comparable sales on the same lake rather than expand the geographical area to search for comparable sales. In utilizing older data, Wurzburg relied on two sales of a single parcel, adjacent to Spirit Lake, that both occurred in 1998 to support a 66 2/3% reduction in value. The parcel first sold as nonbuildable in March 1998 for just under $33,000. In September 1998, the same parcel sold at $99,000 with a provision for an easement on an adjacent property, making it buildable. He did not present any other paired sales to support the 66 2/3% reduction in value. However, he did evaluate the 2009 sale of the nonbuildable, vacant lot on Spirit Lake and argued it supported a 33% ratio. The parcel was first listed in January 2007 at $225,000. Not having sold, it was listed again in July 2007 at $185,000, May 2008 at $165,000, and December 2008 at $115,900. It finally sold in February 2009 for $90,000. Wurzburg argued this supported a 33% ratio in that he looked at the sales price in 2009, less improvements and with an applied time adjustment ($90,000−$9,390−$14,107 = $66,503), and divided it by what he asserted was the full buildable value in 2007 when it first went on the market, $234,790 ($66,503 ÷ $234,790 = 28.3%). He rebutted the assessor's assertion that it was a distress sale, arguing instead that it represented a reduced value due to a declining market. Finally, Wurzburg also testified that when doing a historical analysis of assessed property values, under general market value appraisal standards, there is no limit to how far back in time one can go for data. Wurzburg testified that the county assessor had followed the State Tax Commission rules, but those were mass appraisal standards and not market value standards. He asked the district court to evaluate the case by appraisal standards relating to market value.

Wurzburg also called an expert to testify. The expert had a great deal of experience in appraisals, though it was primarily outside the field of property assessment values of noncommercial real estate. He opined that the value of the nonbuildable parcel should be roughly one-third that of its assessed value if it were buildable. Although he opined that the 1998 Spirit Lake sales were a perfect paired sale because it was the same property, sold within months and showed that the nonbuildable value was approximately 33% of the buildable value, he also stated that it has "historical significance and is a good marker to that market just at that

10

time, not necessarily for the day," and that in a market value appraisal, "it's a comp that probably you wouldn't use."

The standards, which Wurzburg alleged were authoritative, put forward methods employed by both Wurzburg's expert and the county assessor. In other words, according to these authorities, when there is a lack of current data in the same market as the property--as is common--both going back in time and going out geographically are acceptable market value appraisal methods. One of the exhibits Wurzburg introduced into evidence stated, "When faced with a lack of data in a particular market or under a particular set of circumstances, appraisers have two options: they can go back in time in the same market or go out geographically to other, similar markets." The same authority also cautioned against comparing properties that are not truly comparable and applying unsupportable adjustments in regards to the property being valued. Further, in accordance with those standards, if going back in time, an appraiser must apply a market conditions (time) adjustment, whereas an appraiser going out geographically must apply a location adjustment. In regards to going out geographically, the assessor's method is supported by the authoritative manual:

> A second technique to use when no local market data is available is to investigate alternative markets for data. There are no rules or geographic boundaries that limit where an appraiser should or could go to obtain data. . . . The nature of the property will determine, in part, how far the appraiser must go to solve the appraisal problem. . . .
> There are two different ways to "go out geographically" to find market data. The appraiser can attempt to find data that is directly comparable to the subject property and use it in the approaches to value, or data from other geographic markets can be used to support an adjustment made to data from the subject market.

Both the exhibits regarding market value appraisal standards and testimony in the record show that there is no minimum number of comparable properties to use when determining a parcel's value under the sales comparison approach. There is also evidence that under general market value appraisal standards, there is not a specific limit on the number of years an assessor may go back in time to determine market value under the sales comparison approach. However, the evidence also shows that, according to those same market appraisal standards, widening a geographic area is an acceptable approach when taking into account value adjustments and characteristics of the properties actually compared. Those market appraisal standards also support using the most current data available. Additionally, though Wurzburg asserts the

11

statistical method used by the assessor in determining the nonbuildable reduction in value is a mass appraisal standard, the authority upon which Wurzburg relies also states that "[s]tatistical methods can sometime be applied to calculate adjustments to comparable sales" so long as appropriate statistical concepts are applied.

The evidence in the record all relates to the same method of valuation, the sales comparison approach, but is in conflict as to which comparable sales to use. The assessor used ten comparable sales, occurring in more recent history and from a larger geographic area, whereas Wurzburg presented two comparable sales from the same geographic area occurring longer ago in time. Wurzburg argues the district court erred by (1) finding that the assessor was not limited in applying sales of waterfront properties from other lakes to establish property values on Spirit Lake, (2) concluding the evidence did not establish that the appraisal failed to reflect full market value of the property, and (3) affirming the assessor's valuations that only complied with mass appraisal standards and tax commission guidelines.[8]

In making his arguments, Wurzburg, in essence, asks this Court to conclude that once he, as a taxpayer, puts forward evidence of a market value assessment, we must accept it as the superior assessment unless the county assessor uses that same data in the same way and arrives at a different valuation. There is no support for this position in case law. To the contrary, valuation is necessarily somewhat imprecise, and a district court may weigh evidence to determine whether the assessment represents fair market value. It has long been the rule that the valuation of taxable property for assessment purposes must reasonably approximate the fair market value of the property in order to effectuate the policy embodied in article 7, section 5, of the Idaho Constitution, that each taxpayer's property bear the just proportion of the property tax burden. *Merris v. Ada Cnty.*, 100 Idaho 59, 63, 593 P.2d 394, 398 (1979). Fair market value is the touchstone in the appraisal of property for *ad valorem* tax purposes,[9] and a valuation is arbitrary if it does not reflect that fair market value, notwithstanding that the valuation may have

---

[8] Although Wurzburg argues each of these assertions separately, they are truly a supplement to his challenge to the method of valuation employed by the assessor and ultimately upheld by the district court. Thus, we address them all under the analysis of whether the district court properly accepted the assessor's approach to valuation.

[9] *See also* IDAPA 35.01.03.217.01.a ("The assessor shall value the full market value of the entire fee simple interest of property for taxation.").

been determined by the application of an approved method of appraisal set out by the State Tax Commission. *Id.* There is no one factor that can be said to be the key to the proper appraisal of taxable property. *Id.* Market value is essentially a factual issue. *Id*. at 64, 593 P.2d at 399. An appraisal is, by definition, an "estimate of property value for property tax purposes," I.C. § 63-201(1), and a district court may rely on an appraiser's judgment in accepting one valuation over another. *See PacifiCorp*, 153 Idaho at 772, 291 P.3d at 455. The district court, in property valuation cases, is faced with a "battle of the experts" and the difficult task of evaluating competing theories of valuation where each expert utilized accepted valuation methods and also made decisions within the bounds of professional judgment. *See Id*. at 767, 291 P.3d at 450. Weighing the testimony of experts regarding a valuation is within the province of the trier of fact, here the district court. *See City of McCall v. Seubert*, 142 Idaho 580, 585, 130 P.3d 1118, 1123 (2006).

Here, although Wurzburg characterizes the question as one of the sufficiency of the evidence, he ignores the fact that the assessor's method of valuation was a perfectly acceptable approach even according to the market value standards that Wurzburg presented. The valuations are supported by substantial and competent evidence, and we have no authority that directs us to require the assessor to use precisely the same comparable properties or the same method of the sales comparison approach as Wurzburg would have the assessor employ. Where Wurzburg merely argues that his expert is more reliable or the evidence he presents is entitled to more weight, we will not disrupt a district court's determination of weight that is supported by sufficient evidence. *Id.* at 586, 130 P.3d at 1124. The district court did not err in accepting the method of valuation and evidence in support presented by Kootenai County.

### D.     Matched Pair Analysis

Wurzburg challenges the district court's finding of fact accepting that the matched pair analysis of properties on Coeur d'Alene Lake supported a 50% reduction in value. Wurzburg asserts the matched pair analysis presented to the district court supported a ratio of 86%, meaning a 14% reduction in value.[10] Kootenai County asserts this is merely a challenge to how

---

[10]     According to Wurzburg's method of calculating the ratio from this matched pair analysis, his argument seems to support a reduction in value that should be *less* than 50% and appears contrary to his general assertion that the reduction in value applied to Spirit Lake properties should have been greater.

testimony was weighed, which is the province of the trial court. It argues that the district court had to weigh expert testimony in determining the proper appraisal, as appraising is not an exact science, but merely an estimate of value.

In the matched pair analysis from Coeur d'Alene Lake, the assessor looked at the sales price, the sales price after a time adjustment for the market was applied, and the total land value. He took the total land value for the nonbuildable parcel ($150,000) and divided it by the total land value for the buildable parcel ($251,323) to end up with a ratio of roughly 60%. Wurzburg took the same numbers, but used the sales price of the nonbuildable parcel ($255,000) and divided it by the sales price of the buildable parcel ($300,000) to argue that the ratio should be closer to 85-86%. In using the total land values rather than the sales prices, the assessor took into account the number of feet of shoreline, the price per waterfront foot based on the sales price, and then applied a nonbuildable and buildable rate to the respective properties to come up with total land value. Wurzburg does not contend the applied adjustments in the assessor's analysis were erroneous, but argues the paired sales support an 86% ratio. This, again, is a challenge to the weight of evidence and whether the district court should have accepted one methodology over another. We defer to the district court's findings of facts that are supported by substantial evidence, *Id.*, and since the assessor's ratio of 60% is clearly supported by a detailed method of calculation, it is, therefore, supported in the record.

## E.    Property Values

Wurzburg asserts the district court erred in finding property values for 2010 and 2011 because, in its conclusions, it transposed the valuations for the two years and failed to include the value of improvements in the 2011 valuation. Instead of fixing the values at $113,790 and $96,912 for 2010 and 2011 respectively, as actually determined by the assessor, the district court set values at $95,472 for 2010 (failing to include the value of improvements) and $113,790 for 2011. Related to that, Wurzburg challenges one of the findings of fact that only recited the correct 2010 assessed value of the property. Wurzburg asserts the district court failed to include any 2011 valuation in that finding, which is a necessary prerequisite to setting values for both 2010 and 2011 in its conclusion.

Kootenai County asserts these errors are harmless. As to the first challenge, Kootenai County points out that the taxes on those values have already been paid as required by section 63-511(1), the values applied by the assessor's office were the appropriate ones for each

14

tax year, and the transposing of numbers was later corrected by the assessor's office to comply with the facts. As to the second challenge, Kootenai County asserts the district court made a factual determination as to the assessed property value for 2011 and, to the extent that value was interchanged with the value in 2010 in the order, the assessor's office rectified the error, making it harmless to Wurzburg.

The transposing of valuations is simply a clerical oversight in the district court's order. Such a clerical mistake can be corrected pursuant to Idaho Rule of Civil Procedure 60(a). Moreover, as Kootenai County asserts, the property taxes on the valuations had to have been paid despite any challenge thereto according to section 63-511(1). Consequently, any misstatement of valuation after-the-fact by the district court would not have disrupted the amount of tax actually paid by Wurzburg for 2010 and 2011. The error, therefore, is harmless. Additionally, the absence of any recitation of the 2011 assessed value in the findings of facts, if error at all, is also harmless. The ultimate point at issue before the district court was whether the 50% reduction was improper, resulting in an erroneous assessed value. It was not disputed what value the County assessed to the property in 2011, and though transposed as the 2010 assessed value, the amount was stated in the district court's conclusion. To the extent the clerical mistakes have not yet been corrected, on remand the district court shall enter an amended order to correct the valuations to reflect the true assessed values in the respective tax years according to Rule 60(a).

## F. Application of Idaho Code § 63-3813

Wurzburg asserts that the district court erred in its order freezing the property value for the subsequent year, citing Idaho Code § 63-3813 as authority. Wurzburg asserts that section 63-3813 is not applicable to this case because that statute only applies to BTA decisions "which are not appealed to the district court within the prescribed time." Wurzburg appealed the 2011 valuation from the county BOE directly to the district court and not to the BTA. Because there was no BTA determination, Wurzburg asserts the statute does not apply. Moreover, Wurzburg contends that he timely appealed affirmance of the 2010 valuation by the BTA to the district court, and consequently, the statute does not apply to the 2010 valuation either. Even if section 63-3813 does apply, Wurzburg asserts that the district court exceeded its authority in ordering the value to remain unchanged because the language in the statute requires "that annual trending or equalization applied to all properties of a property class or category within the county

15

or a clearly defined area shall still apply," meaning the reduction rate *for waterfront properties in that area on Spirit Lake* should have been applied. Kootenai County asserts the error is harmless because the property value for tax purposes did not increase and the taxable value of the parcel for 2012 was market-adjusted downward in accordance with section 63-3813 to reflect the annual trending of values of property in its class.[11]

In determining whether the statute applies to this case, we exercise free review. *See Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011). Statutory interpretation must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). It is well established that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature. *Id.* Only where a statute is capable of more than one conflicting construction is it said to be ambiguous and invoke the rules of statutory construction. *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 743, 40 P.3d 96, 101 (2002).

Section 63-3813 states, in relevant part, as follows:

> In all cases *which are not appealed to the district court within the prescribed time*, the decision *of the board of tax appeals* shall be conclusive and all records shall be corrected to comply with the decision of the board. A final decision or order of the board of tax appeals directing a market value change for taxable property *that is not further appealed* shall be fixed for the current year appealed and there shall be no increase in value for the subsequent assessment year when no physical change occurs to the property; provided however, that annual trending or equalization applied to all properties of a property class or category within the county or a clearly defined area shall still apply.

(Emphasis added.)

By the plain language in the statute, we agree with Wurzburg that the statute is inapplicable to this case. The appeal of the 2010 valuation was appealed to the district court in a timely manner. Clearly, it falls outside the statutory language applying section 63-3813 to all cases that *are not appealed to the district court within the prescribed time*. The statute is also

---

[11] Kootenai County primarily asserts that this issued was briefed and argued before the trial court without objection from Wurzburg, meaning it is not preserved for appeal. We decline to draw that conclusion. The actual application of the statute was contained within district court's order, which itself is timely appealed. *See* I.C. § 13-201.

inapplicable to the 2011 valuation because there was no decision *of the board of tax appeals* as to the valuation of the property, which, by the wording in the statute, is the decision deemed to be conclusive. Rather, Wurzburg appealed the BOE's decision regarding the 2011 valuation directly to the district court and the matter was consolidated with the 2010 valuation for purposes of appeal. Without a decision by the BTA, there is not a decision to rely upon under the statute for the 2011 tax year. The district court erred by ordering any action under the authority in section 63-3813. Therefore, we remand the case for the district court to enter an amended order that does not contain any application and conclusions regarding section 63-3813.

G.      **Equitable Remedy Sought**

Wurzburg argues that, in the event this Court finds for him on the issues of the 2010 and 2011 assessed property value, this Court should also address the valuation of the parcel made in 2012 as an equitable remedy. We decline to address this issue. We do not find for Wurzburg on the issue of the 2010 and 2011 valuations and, therefore, find no basis for an equitable remedy. Moreover, apart from the district court's error in ordering the property's valuation to remain unchanged for 2012 according to section 63-3813, the 2012 valuation was otherwise not at issue before the district court.

H.      **Attorney Fees and Costs**

Kootenai County asserts it is entitled to attorney fees and costs pursuant to Idaho Code § 12-117(1), arguing that Wurzburg brought this appeal without a reasonable basis in fact or law in light of the Idaho Supreme Court's recent decision in *PacifiCorp*. Section 12-117(1) provides that the court shall award attorney fees to the prevailing party if the other party brought the appeal without a reasonable basis in fact or law. Wurzburg's appeal was not wholly without a reasonable basis in fact or law, as our analysis of the applicable burden of proof and our interpretation of section 63-3813 establish there was error in the district court's order. Moreover, where a party has only prevailed in part on appeal, it is not the prevailing party and not entitled to an award of attorneys' fees. *See Tapadeera, LLC v. Knowlton*, 153 Idaho 182, 189, 280 P.3d 685, 692 (2012).

### III.

### CONCLUSION

Any error by the district court regarding the burden of proof was harmless because the district court's findings support its determination that Wurzburg failed to show the assessed

17

valuations were erroneous. The district court did not err in accepting the valuation method of the county assessor because the sales comparison approach is an approved approach to determining fair market value and there is substantial evidence that the way in which the assessor employed the approach not only met State Tax Commission rules but also otherwise complied with national appraisal standards. Additionally, the district court's finding of fact regarding the matched pair analysis is supported by substantial evidence in the record. Any error in the district court's findings of property values for 2010 and 2011 are correctable under Rule 60(a) as clerical mistakes. However, the district court did err in applying section 63-3813 to this particular case and freezing the property values for the subsequent year. Therefore, we affirm the determination upholding the assessor's valuations for tax years 2010 and 2011, but reverse on the application of section 63-3813, and remand the case to the district court with direction to amend the order by removing any application and conclusions regarding that statutory section and to correct the clerical mistakes. We award no attorney fees or costs on appeal.

Judge LANSING and Judge MELANSON **CONCUR.**